[No. B211850. Second Dist., Div. Five. Dec. 22, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID GARCIA FRANCO, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of Discussion, parts C and D.

714

COUNSEL

Ronnie Duberstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Susan D. Martynec and Thomas C. Hsieh, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

MOSK, J.—

## INTRODUCTION

Defendant and appellant David Garcia Franco (defendant) was arrested after an inspection of his apartment revealed a large quantity of drugs and drug paraphernalia. Defendant admitted to using the drugs, but denied that he sold or intended to sell them. A jury convicted defendant of maintaining a place for selling, giving away or using a controlled substance (Health & Saf. Code, § 11366).[1] The jury acquitted defendant on two counts of possession of a controlled substance for sale (§§ 11351, 11378), but convicted defendant of the lesser included offense of simple possession of a controlled substance (§§ 11350, subd. (a), 11377, subd. (a)).

In the published portion of this opinion, we hold that section 11366 is not violated by a defendant's personal use of a controlled substance in his or her own home, even if the defendant used drugs continuously or repeatedly. As relevant here, section 11366 is violated only if the defendant maintains a place for the continuous or repeated use of drugs *by others*. Accordingly, the trial court erred by giving the jury an instruction that permitted it to convict defendant for maintaining a place for his own personal drug use. We reverse defendant's conviction under section 11366 and remand for retrial on that count. In the unpublished portion of this opinion, we affirm the remainder of the judgment.

## BACKGROUND[2]

Defendant leased an apartment in a building on East 3rd Street in Pomona. The property management company responsible for the building had a policy

---

[1] All statutory references are to the Health and Safety Code, unless stated otherwise.

[2] On appeal, "we must view the evidence in the light most favorable to the verdict and presume the existence of each fact that a rational juror could have found proved by the evidence. [Citation.]" (*People v. Rundle* (2008) 43 Cal.4th 76, 139, fn. 30 [74 Cal.Rptr.3d 454,

of conducting biannual inspections of the apartments to determine the condition of the apartments and, in effect, to monitor whether tenants were complying with their leases. In April 2008, employees of the property management company discovered what they believed to be drugs in plain view during an inspection of defendant's apartment. They notified the police.

Defendant consented to a search of his apartment by the police. On the bar in the kitchen area, police saw two lines of cocaine cut for use and two rolled dollar bills. There was another line of cocaine and a rolled bill in a bedroom. Police further searched the apartment and discovered: (1) four sets of electronic scales, two with a white powdery residue consistent with cocaine; (2) inositol powder, commonly used as a cutting agent for cocaine; (3) clear plastic baggies, commonly used as a packaging medium for narcotics; (4) a methamphetamine pipe; (5) a clear plastic bag containing 107 grams of cocaine; (6) a black plastic bag, inside of which was a plastic bag containing 39.5 grams of methamphetamine, a plastic bag containing 26.8 grams of cocaine, and several small wrapped baggies containing a total of 8.19 grams of cocaine; (7) a nine-millimeter semiautomatic handgun, in a holster, with 20 live rounds, including a loaded magazine inserted into the weapon, one round in the chamber, and a fully loaded secondary magazine; (8) $503 in cash in a bag hanging on a bedpost; and (9) $3,526 stuffed between the mattress and box spring of a bed. The cocaine recovered by police had an estimated street value of $11,000, and the methamphetamine recovered had an estimated street value of $4,000.

Defendant presented evidence that the nine-millimeter firearm and ammunition belonged to a friend who had asked defendant to hold them for safekeeping during a visit from the friend's relatives; the cash was from a restaurant defendant operated; and defendant was not putting money in the bank because he was in the process of getting a divorce. Defendant admitted that he started using drugs with his roommate, Daniel Zaragoza, shortly before his arrest, and that he was using cocaine heavily due to personal problems. Defendant denied selling drugs. Defendant testified that Zaragoza, a truck driver, left on a trip to Oklahoma a few days before defendant was arrested. Defendant further testified that he was not aware that the electronic scales or the methamphetamine pipe were in the apartment.

## B. PROCEDURAL BACKGROUND

Defendant was charged with one count of possession of a controlled substance with a firearm (§ 11370.1, subd. (a)) (count 1); two counts of

possession of a controlled substance for sale (§§ 11351 [cocaine], 11378 [methamphetamine]) (counts 2 and 4); one count of maintaining a place for selling or using a controlled substance (§ 11366) (count 3); one count of possession of a firearm by a felon (Pen. Code, § 12021, subd. (a)(1)) (count 5); and one count of possession of ammunition by a felon (Pen. Code, § 12316, subd. (b)(1)) (count 6). The information also specially alleged pursuant to section 11370 that defendant had a prior drug conviction. The jury convicted defendant of the lesser included offense of possession of a controlled substance on counts 2 and 4, and convicted defendant as charged on all other counts.

The trial court sentenced defendant to a total prison term of four years four months on counts 1, 4 and 6. The trial court stayed the sentences on counts 2, 3 and 5 pursuant to Penal Code section 654. The trial court also imposed various fines and penalties.

## DISCUSSION

### A. *CALCRIM No. 2440 (Count 3)*

Count 3 charged defendant with maintaining a place for the use of a controlled substance. (§ 11366.) Defendant contends the trial court's instruction omitted an element of the offense, which was that the place must be provided to *others* for use of the controlled substance. We agree.

#### 1. *Additional Background*

Section 11366 provides in pertinent part: "Every person who opens or maintains any place for the purpose of unlawfully selling, giving away, or using any controlled substance . . . shall be punished by imprisonment in the county jail for a period of not more than one year or the state prison." "The proscribed 'purpose' is one that contemplates a continuity of such unlawful usage; a single or isolated instance of the forbidden conduct does not suffice." (*People v. Horn* (1960) 187 Cal.App.2d 68, 72 [9 Cal.Rptr. 578] (Tobriner, J.); see *People v. Vera* (1999) 69 Cal.App.4th 1100, 1102 [82 Cal.Rptr.2d 128] (*Vera*); *People v. Holland* (1958) 158 Cal.App.2d 583, 588–589 [322 P.2d 983] [must be "some purpose of continuity"]; see *People v. 25651 Minoa Dr.* (1992) 2 Cal.App.4th 787, 799 [3 Cal.Rptr.2d 577].)

Although defendant's trial occurred in September 2008, the trial court instructed the jury with an old version of CALCRIM No. 2440, dated January 2006. The trial court instructed, "The defendant is charged in Count 3 with maintaining a place for the sale or use of a controlled substance in violation of Health and Safety Code section 11366. [¶] To prove that the defendant is

guilty of this crime, the People must prove that: [¶] 1. The defendant maintained a place; [¶] AND [¶] 2. The defendant maintained the place with the intent to sell or use a controlled substance, specifically cocaine, on a continuous or repeated basis at that place."[3] Defense counsel approved the instruction and did not request any modification or clarification of the instruction.

During deliberations, the jury requested the following clarification of the instruction as to count 3: "Is the term 'use' for private use or for customer use?" The trial court responded, "Refer to the language of Instruction # 2440 for the elements of the crime. [¶] . . . [¶] View these instructions in light of all the court's instructions." Defense counsel did not object to the trial court's response to the jury. The jury convicted defendant on count 3, but acquitted defendant on two counts of possession for sale, convicting him instead of the lesser offense of simple possession.

### 2. *Forfeiture*

The People argue that defendant forfeited his challenge to the jury instruction by failing to object in the trial court. Generally, a party forfeits any challenge to a jury instruction that was correct in law and responsive to the evidence if the party fails to object in the trial court. (*People v. Hudson* (2006) 38 Cal.4th 1002, 1011–1012 [44 Cal.Rptr.3d 632, 136 P.3d 168]; *People v. Ramos* (2008) 163 Cal.App.4th 1082, 1087 [78 Cal.Rptr.3d 186] (*Ramos*).) The rule of forfeiture does not apply, however, if the instruction was an incorrect statement of the law (*People v. Hudson, supra,* 38 Cal.4th at p. 1012), or if the instructional error affected the defendant's substantial rights. (Pen. Code, § 1259; *Ramos, supra,* 163 Cal.App.4th at p. 1087.) " 'Ascertaining whether claimed instructional error affected the substantial rights of the defendant necessarily requires an examination of the merits of the claim—at least to the extent of ascertaining whether the asserted error would result in prejudice if error it was.' [Citation.]" (*Ramos, supra,* 163 Cal.App.4th at p. 1087.) As we discuss, the instruction was an incorrect statement of the law, and the error affected defendant's substantial rights. Defendant did not forfeit his claim of error.

---

[3] CALCRIM No. 2440 has been revised so that the formulation of the second element addresses the specific point raised by defendant on this appeal. As of the October 2009 edition, CALCRIM No. 2440 provides in part, with the pertinent language in bold: "2. The defendant (opened/ [or] maintained) the place with the intent to (sell[,]/ [or] give away[,]/ [or] **allow others to use**) a (controlled substance/ [or] narcotic drug), specifically *<insert name of drug>*, on a continuous or repeated basis at that place."

### 3. *Standard of Review*

We review de novo whether a jury instruction correctly states the law. (*People v. Posey* (2004) 32 Cal.4th 193, 218 [8 Cal.Rptr.3d 551, 82 P.3d 755]; *Ramos, supra,* 163 Cal.App.4th at p. 1088.) Our task is to determine whether the trial court " 'fully and fairly instructed on the applicable law.' [Citation.]" (*Ramos, supra,* 163 Cal.App.4th at p. 1088.) When instructions are claimed to be conflicting or ambiguous, "we inquire whether the jury was 'reasonably likely' to have construed them in a manner that violates the defendant's rights." (*People v. Rogers* (2006) 39 Cal.4th 826, 873 [48 Cal.Rptr.3d 1, 141 P.3d 135].) We look to the instructions as a whole and the entire record of trial, including the arguments of counsel. (*People v. Stone* (2008) 160 Cal.App.4th 323, 331 [72 Cal.Rptr.3d 747]; *People v. Dieguez* (2001) 89 Cal.App.4th 266, 276 [107 Cal.Rptr.2d 160].) We assume that the jurors are " ' "intelligent persons and capable of understanding *and correlating* all jury instructions . . . given." ' " (*Ramos, supra,* 163 Cal.App.4th at p. 1089.) If reasonably possible, we will interpret the instructions to support the judgment rather than to defeat it. (*Id.* at p. 1088.) Instructional error affects a defendant's substantial rights if the error was prejudicial under the applicable standard for determining harmless error. (See *People v. Lawrence* (2009) 177 Cal.App.4th 547, 553, fn. 11 [99 Cal.Rptr.3d 324]; *People v. Andersen* (1994) 26 Cal.App.4th 1241, 1249 [32 Cal.Rptr.2d 442]; see also fn. 4, *post.*)

### 4. *Application*

Defendant argues that for him to be convicted of violating section 11366 on the theory that he maintained a place for the use of controlled substances, the evidence must show that he maintained the place for the use of controlled substances *by others.* Defendant contends that section 11366 is not violated when a defendant maintains a place for his or her own *personal* drug use, even if the defendant used drugs continuously or repeatedly. The People, on the other hand, contend that "under the plain language of the statute, it appears that a defendant may be convicted . . . where he or she maintains or opens a place for personal drug use . . . ." Accordingly, we must interpret section 11366 to determine if it encompasses maintaining a place for the defendant's personal drug use.

■ " 'In construing a statute, our role is to ascertain the Legislature's intent so as to effectuate the purpose of the law. [Citation.] In determining intent, we must look first to the words of the statute because they are the most reliable indicator of legislative intent. [Citation.]' [Citation.] 'We do not, however, consider the statutory language "in isolation." [Citation.] Rather, we

look to "the entire substance of the statute . . . to determine the scope and purpose of the provision . . . . [Citation.]" [Citation.] That is, we construe the words in question " 'in context, keeping in mind the nature and obvious purpose of the statute . . . .' " ' [Citation.]" (*People v. Brookfield* (2009) 47 Cal.4th 583, 592 [98 Cal.Rptr.3d 535, 213 P.3d 988].) "If the statute is ambiguous, we may consider a variety of extrinsic aids, including legislative history, the statute's purpose, and public policy. [Citation.] If a statute defining a crime or punishment is susceptible of two reasonable interpretations, we ordinarily adopt the interpretation that is more favorable to the defendant. [Citation.]" (*People v. Arias* (2008) 45 Cal.4th 169, 177 [85 Cal.Rptr.3d 1, 195 P.3d 103].)

Section 11366 makes it a crime to "open[] or maintain[] any place for the purpose of unlawfully selling, giving away, or using" specified controlled substances, including cocaine. Accordingly, the elements of the offense "are that the defendant (a) opened or maintained a place (b) with a purpose of continuously or repeatedly using it for selling, giving away, or using a controlled substance. [Citations.]" (*People v. Hawkins* (2004) 124 Cal.App.4th 675, 680 [21 Cal.Rptr.3d 500].)

■ If read in isolation, the term "using" in section 11366 reasonably could be understood to encompass the defendant's personal use of a controlled substance. If read in context, however, the term reasonably could be understood to refer to the "use" of controlled substances by third persons. (See *People v. Loeun* (1997) 17 Cal.4th 1, 9 [69 Cal.Rptr.2d 776, 947 P.2d 1313] [" ' "Words must be construed in context . . . ." ' "].) The statute proscribes "opening" and "maintaining" a "place" for specified purposes. As explained by the court in *Vera, supra,* 69 Cal.App.4th 1100, "To 'open' means 'to make available for entry' or 'to make accessible for a particular purpose' [citation] and to 'maintain' means 'to continue or persevere in' [citation]. When added to the word 'place,' the opening or maintaining of a place indicates the provision of such locality *to others.*" (*Id.* at p. 1103, italics added.) Accordingly, to "maintain" a place for the proscribed purpose is to "continue" to make the place available or accessible to others. If the place is no longer "open" to others, then it is no longer being "maintained" for that purpose. Therefore, although the term "use" in section 11366 is not expressly confined to use *by others,* in context the term reasonably can be viewed as referring to use by persons other than or in addition to the defendant.

Similarly, the acts of "selling" and "giving away"—as used in the phrase "selling, giving away, or using" in section 11366—both require the participation of a person other than defendant, i.e., a purchaser or recipient. Read as part of that series—"selling," "giving away," and "using"—the term "using"

reasonably can be understood to proscribe opening or maintaining a place where *others* use drugs not sold or given away on the premises, i.e., that were procured elsewhere. (See *Vera, supra,* 69 Cal.App.4th at p. 1102 [§ 11366 does not require the sale or gift of controlled substances, but " 'can be violated . . . merely by providing a place for drug abusers to gather and share their experience.' [Citation.]"].) In view of conflicting reasonable interpretations, the language of the statute is ambiguous with respect to whether "using" a controlled substance refers to personal use by the defendant, or only to use by someone other than the defendant.

This ambiguity was addressed by the Court of Appeal in *Vera, supra,* 69 Cal.App.4th 1100, albeit in a different context. The issue in that case was whether a conviction under section 11366 constituted a crime of moral turpitude admissible to impeach a defendant's testimony at her trial on other charges. (69 Cal.App.4th at p. 1102.) The defendant argued that section 11366 was *not* a crime of moral turpitude because "a violation of section 11366 occurs if a person engages in the personal, sequential use of any of the specified substances in his residence." (69 Cal.App.4th at pp. 1102–1103.) The appellate court rejected that argument, stating, "We do not read this section to cover mere repeated solo use at home." (*Id.* at p. 1103.) In general, the court observed, the mere possession or personal use of a controlled substance is *not* a crime of moral turpitude. (*Ibid.*) In contrast, drug offenses involving the sale or transportation or possession for sale *are* crimes of moral turpitude because they involve the intent to corrupt others. (*Ibid.*) The court concluded, "It is true that a violation of section 11366 may be committed by opening or maintaining a place for the sole purpose of unlawfully 'using,' as opposed to 'selling' or 'giving away,' specified controlled substances or narcotic drugs. However, regardless of which of those prohibited purposes is actually involved, *the place is intended to be provided to others for that prohibited purpose.* Thus, unlike an offense of simple possession, a violation of section 11366 necessarily evidences moral turpitude *because it involves the intent to corrupt others.*" (*Ibid.,* italics added.)

Similar reasoning led the court in *People v. Ferrando* (2004) 115 Cal.App.4th 917 [9 Cal.Rptr.3d 670] to conclude that a violation of section 11366 does not qualify as a "nonviolent drug possession offense" for purposes of Proposition 36. (Pen. Code, § 1210, subd. (a).) The court explained that the offense defined by section 11366 "is not a simple possession offense," but "is more like a commercial offense" such as the sale, production or manufacture of controlled substances. (*People v. Ferrando, supra,* 115 Cal.App.4th at p. 920.) Felons convicted of such "commercial offenses" are "not eligible for Proposition 36 sentencing." (*Ibid.*)

■ Also instructive is *People v. Shoals* (1992) 8 Cal.App.4th 475 [10 Cal.Rptr.2d 296]. In that case, the court held that the trial court had erred by failing to define for the jury the concepts of "opening" and "maintaining" as used in section 11366. (8 Cal.App.4th at pp. 489–490.) The appellate court observed that the terms "open" and "maintain" as used in section 11366 are technical, legal terms derived from statutory schemes originally enacted during Prohibition. (8 Cal.App.4th at p. 490.) "Cases construing the terms 'maintaining' or 'opening' in reference to narcotics cases rely on earlier opinions which construed those terms in statutes proscribing maintaining alcohol-related nuisances during Prohibition. These were places whose proprietors meant them to be used for consumption or sale of alcohol." (*Ibid.*) Thus, it appears that the intent of statutes such as section 11366 was to prohibit persons from maintaining a public nuisance, such as a Prohibition-era speakeasy or a modern crack house. The use of drugs by an individual in his or her own home does not by itself give rise to the type of public nuisance the statute was designed to address.

■ This interpretation of section 11366 is consistent with a common sense reading of the statute. To interpret section 11366 to reach a defendant's personal drug use could lead to absurd results. (*Woods v. Young* (1991) 53 Cal.3d 315, 323 [279 Cal.Rptr. 613, 807 P.2d 455] ["Interpretations that lead to absurd results . . . are to be avoided"].) Presumably, many people who frequently use drugs do so in their homes. As a practical matter, therefore, adopting the People's reading of the statute would mean that section 11366 could apply in every case involving the simple possession or use of drugs in which there was evidence that the defendant consumed illegal drugs in his or her own home. Moreover, a person who used illegal drugs while alone in the privacy of his or her own home would be subject to greater criminal penalties than a person who repeatedly used drugs in public or in some other location maintained by someone else. There is no indication in the language of the statute or its purpose that the Legislature intended such a result.

The legislative history of section 11366 is not determinative as to whether the Legislature intended the statute to apply to individual use of controlled substances at home. In 1972, the Legislature enacted section 11366 and repealed the statute's predecessor, former section 11557. (Stats. 1972, ch. 1407, §§ 2, 3, pp. 2986, 3019; former § 11557, as amended by Stats. 1970, ch. 1098, § 12, pp. 1952–1953.) When former section 11557 was enacted in 1940, the statute provided, "It is unlawful to open or maintain *to be resorted to by other persons* any place in which narcotics are unlawfully sold, given away, or smoked." (Stats. 1941, 1st Ex. Sess. 1940, ch. 9, § 32, p. 23, italics added.) In 1953, the Legislature amended the statute to, inter alia, delete the language "to be resorted to by other persons." (Stats. 1953, ch. 1770, § 4, p. 3526.) The amended statute stated, "It is unlawful to open or maintain any

place for the purpose of unlawfully selling, giving away or using any narcotic." (*Ibid.*) The Legislative Counsel summarized the 1953 statutory change by just noting the change in language. (Legis. Counsel's Dig., Assem. Bill No. 2238 (1953 Reg. Sess.) Summary Dig., p. 216.)

Although one might infer that the 1953 amendment's deletion of the reference to "other persons" is significant, it is equally reasonable to conclude that the amendment only eliminated unnecessary and awkward language. The pre-1953 language suggests that the Legislature intended to apply the statute to places that are made available to others. Had the Legislature intended to modify the statute to include personal use only, one would expect an express indication of that intent. Thus, the legislative history is inconclusive.

If the Legislature believed that the decision in *Vera, supra,* 69 Cal.App.4th 1100 incorrectly reflected "legislative intent," it could have amended the statute. It has not done so. When " ' "a statute has been construed by judicial decision, and that construction is not altered by subsequent legislation, it must be presumed that the Legislature is aware of the judicial construction and approves of it." [Citations.]' " (*People v. Meloney* (2003) 30 Cal.4th 1145, 1161 [135 Cal.Rptr.2d 602, 70 P.3d 1023].)

Finally, even if there are two equally reasonable interpretations of section 11366, we resolve doubts as to the meaning of the statute in defendant's favor—the "rule of lenity." The Supreme Court has recognized the application of that rule in certain circumstances. (*People v. Story* (2009) 45 Cal.4th 1282, 1294 [91 Cal.Rptr.3d 709, 204 P.3d 306].) The Supreme Court stated, "As Witkin explains, 'The rule [of lenity] applies only if the court can do no more than guess what the legislative body intended; there must be an egregious ambiguity and uncertainty to justify invoking the rule.' [Citation.] . . . 'The rule of statutory interpretation that ambiguous penal statutes are construed in favor of defendants is inapplicable unless two reasonable interpretations of the same provision stand in relative equipoise, i.e., that resolution of the statute's ambiguities in a convincing manner is impracticable.' " (*People v. Avery* (2002) 27 Cal.4th 49, 57–58 [115 Cal.Rptr.2d 403, 38 P.3d 1].) Because section 11366 contains "true ambiguities" (27 Cal.4th at p. 58), we are justified in adopting the interpretation more favorable to defendant.

For these reasons, we hold that section 11366 does not apply to an individual's continuous or repeated use of controlled substances at home, absent evidence that the individual opened his or her home to others for the purpose of selling or giving away to them, or for the use by them of such

substances. The jury instruction in this case, and the trial court's response to the jury's request for clarification, permitted the jury to convict defendant on an improper legal theory, and were therefore erroneous.

### 5. *Prejudice*

The People concede that, if there was instructional error in this case, it was prejudicial. We agree.[4] "When one of the theories presented to a jury is legally inadequate, such as a theory which ' "fails to come within the statutory definition of the crime" ' [citation], the jury cannot reasonably be expected to divine its legal inadequacy. The jury may render a verdict on the basis of the legally invalid theory without realizing that, as a matter of law, its factual findings are insufficient to constitute the charged crime. In such circumstances, reversal generally is required unless 'it is possible to determine from other portions of the verdict that the jury necessarily found the defendant guilty on a proper theory.' [Citation.]" (*People v. Perez* (2005) 35 Cal.4th 1219, 1233 [29 Cal.Rptr.3d 423, 113 P.3d 100]; see also *Griffin v. United States* (1991) 502 U.S. 46, 59 [116 L.Ed.2d 371, 112 S.Ct. 466]; *People v. Guiton* (1993) 4 Cal.4th 1116, 1128 [17 Cal.Rptr.2d 365, 847 P.2d 45].)

The error here involved the presentation of a legally erroneous theory to the jury—that is, that defendant could be convicted upon a showing that he personally used controlled substances in his home on a continuous or repeated basis. Reversal is required because there is nothing in the record to establish that the jury necessarily rejected that theory and instead convicted appellant on a proper theory. To the contrary, the jury acquitted defendant on two charges of possession of narcotics for sale, and instead convicted him of the lesser included offense of simple possession. The jury's request for clarification demonstrates that it was concerned about whether a conviction could be based upon defendant's personal drug use. There was evidence that defendant personally used cocaine on a continuous or repeated basis in his home. For example, defendant testified that he abused cocaine in his home, and police discovered a large quantity of drugs in the apartment, including three lines of cocaine cut for use. We cannot rule out the possibility the jury convicted appellant on the basis of an invalid legal theory. Because the error was prejudicial, defendant's conviction for violating section 11366 must be reversed.

---

[4] We conclude that the error was prejudicial under either *People v. Watson* (1956) 46 Cal.2d 818 [299 P.2d 243] (reversal is required if it is reasonably probable the result would have been more favorable to the defendant had the error not occurred) or *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824] (harmless beyond a reasonable doubt). We therefore do not determine which standard applies.

### B. *Substantial Evidence (Count 3)*

Although we reverse defendant's conviction for violating section 11366, we must nevertheless resolve defendant's contention regarding the sufficiency of the evidence to determine whether defendant may be retried for the offense. (*People v. Morgan* (2007) 42 Cal.4th 593, 613 [67 Cal.Rptr.3d 753, 170 P.3d 129].) " 'In reviewing the sufficiency of the evidence, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' [Citation.] 'Substantial evidence' is evidence which is " 'reasonable in nature, credible, and of solid value.' "[Citation.]" (*Id.* at pp. 613–614.)

In this case, a large quantity of drugs was discovered in defendant's apartment. In addition, there was substantial evidence that the drugs were not brought into the home recently or for mere transit to another place. The police discovered four electronic scales in three different rooms of the apartment, a cutting agent, drug packaging materials, large amounts of cash, and a loaded firearm. Defendant testified that he and Zaragoza had used cocaine in the apartment on multiple occasions over the course of at least one month, with defendant using so heavily that he had two "attacks" that required medical treatment. Defendant also testified that Zaragoza had brought "women" into the apartment. Police discovered three lines of cocaine cut for personal use in two different rooms of the apartment. A reasonable jury could infer from such evidence that persons other than defendant had used cocaine in the apartment on a repeated basis, and that defendant had therefore "opened" and "maintained" his apartment for the "use" of controlled substances by one or more other persons. Accordingly, because there was sufficient evidence to support a conviction under section 11366, defendant may be retried on the charge. (See *People v. Hallock* (1989) 208 Cal.App.3d 595, 610 [256 Cal.Rptr. 264].)

### C., D.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

.

---

*See footnote, *ante*, page 713.

## DISPOSITION

Defendant's conviction under section 11366 on count 3 is reversed. The matter is remanded to the trial court for further proceedings consistent with this opinion. In all other respects, the judgment is affirmed.

Turner, P. J., and Armstrong, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 30, 2010, S179800.