Filed 2/25/13  P. v. Kaufmann CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B239026 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA053422) |
| v. | |
| MAIK KAUFMANN, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of the County of Los Angeles, Charles A. Chung, Judge.  Affirmed but remanded with instructions.

Carol S. Boyk, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Chung L. Mar and Zee Rodriguez, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

Following trial, a jury found defendant and appellant Maik Kaufmann (defendant) guilty of possession for sale of a controlled substance and maintaining a place for the sale or use of a controlled substance. On appeal, defendant contends that the trial court abused its discretion when it allowed testimony concerning a text message. Defendant also contends that he received ineffective assistance of counsel because his trial counsel failed to request limiting instructions as to evidence admitted against a codefendant who pleaded no contest prior to the close of evidence. And defendant argues that the trial court incorrectly instructed the jury as to the elements of one of the charged crimes. In a supplemental brief, defendant maintains that he is entitled to additional conduct credits and that the abstract of judgment should be corrected to reflect his aggregate sentence pursuant to California Rules of Court, rule 4.452.

Given the strength of the evidence in support of the findings of guilt on the two charged crimes, we hold that defendant has failed to demonstrate that he was prejudiced by any of the three claimed errors on appeal. We further hold that defendant is entitled to the additional custody credits he claims and that the abstract of judgment should be corrected to reflect accurately his conduct credits and aggregate sentence. We therefore affirm the judgment of conviction, but remand with instructions to correct the abstract of judgment to reflect the additional conduct credits to which defendant is entitled and to reflect defendant's aggregate sentence.

# FACTUAL BACKGROUND

On May 13, 2011, Los Angeles County Deputy Sheriff Russell Deloof made a traffic stop and arrested Billy Cassanoleimkuhler for, inter alia, possession for sale of methamphetamine. He told the deputy where he bought the drugs and from whom he bought them.

On May 20, 2011, Deputy Deloof stopped defendant's vehicle. During the stop, defendant told the deputy that he lived in a pink trailer close to Division Street.

On June 26, 2011, Deputy Deloof made a traffic stop at Division Street and Avenue E in Lancaster. He arrested the suspect, David Knickerbocker, for possession of methamphetamine. When Deputy Deloof asked Knickerbocker where he had purchased the methamphetamine, Knickerbocker told him that he purchased it from Mike and Bob who lived in a pink trailer located in a trailer park at Division Street and Avenue F-4.[1]

Based on the information Deputy Deloof learned during the three traffic stops, he obtained a search warrant for trailer 21 located at 47455 Division Street. On July 12, 2011, at approximately 5:30 a.m., Los Angeles County Sheriff's Deputy Mark Madrid was part of the entry team that executed the search warrant at the trailer park located at 47455 Division Street, trailer 21. The team had seven members and three or four additional deputies contained the perimeter at the location. Deputy Deloof was not part of the entry team. Deputy Madrid was the first member of the team to enter the trailer. He entered through a sliding glass door into the living room area. Defendant and two females were in the living room sitting on an L-shaped couch. The three occupants were ordered down on the floor. Defendant took a position on the floor near where a package of methamphetamine was later recovered.

According to Deputy Deloof, defendant and the two females were removed from the trailer and detained in patrol cars. In one of the female's pockets, deputies recovered

---

[1]     Knickerbocker testified at trial and denied telling Deputy Deloof where he purchased the methamphetamine and who sold it to him.

3

a clear plastic baggie containing methamphetamine, and underneath the front of the couch they recovered another baggie containing methamphetamine.[2] On a table in front of the couches, deputies recovered several items: a glass tray with a white powdery substance on it; $306 in small denomination U.S. currency; two electronic digital scales next to the glass tray; "pay owe" sheets with names and dollar amounts written on them; defendant's wallet with his picture identification; four larger baggies filled with smaller individual baggies; and three cell phones on the table and one on the floor between the couch and table.

One of the four cell phones recovered had a text message from codefendant Nick McMullen that read, "Cops are here raiding Cowboy's."[3] The text message was dated July 12, 2011, the date the deputies executed the search warrant at defendant's trailer.

The deputies also observed surveillance equipment comprised of two monitors in the living room, one of which was showing a live feed depicting the southern entrance of the trailer park and the dirt road that led to the entrance of defendant's trailer. On the outside of the trailer, deputies located a small camera pointed in the direction of the southern entrance. Based on the items found in trailer 21, the deputies arrested defendant and the two females.[4]

Based on his training and experience in narcotics investigations involving the sale of methamphetamine, Deputy Madrid was asked a series of hypothetical questions based on the searches of defendant's trailer and McMullen's trailer, and gave the following opinions. According to Deputy Madrid, 1.78 grams of methamphetamine—the amount

---

[2]     A criminalist testified, inter alia, that both baggies contained methamphetamine.

[3]     Deputy Deloof was familiar with a man called "Cowboy" (Bob Manning) who lived at the trailer park in trailer 20.

[4]     Based on the search of trailer 21, deputies also searched trailer 20 occupied by Cowboy and trailer 17 in which codefendant McMullen was located with methamphetamine, drug paraphernalia, including a scale and a cutting agent, "pay-owe" sheets, guns, and two deadly weapons—throwing stars or "shurikens." As a result of the search of his trailer, McMullen was arrested.

recovered from under defendant's couch—was a usable amount that would yield between 30 and 90 uses depending on dosage. He also opined that .48 grams—the amount found in one of the female's pockets—and .14 grams—the amount found in McMullen's trailer—were usable amounts. He explained that it was common for someone to both use and sell methamphetamine.

In Deputy Madrid's opinion, based on the persons located in the trailer in the hypothetical and the items recovered from that location, including the glass tray with residue on it, the scales, the baggies, the cash, the "pay owe" sheets, the four cell phones, and the surveillance equipment, the methamphetamine recovered from the trailer in the hypothetical based on the search of defendant's trailer was possessed for sale.[5]

According to Deputy Madrid, dealers sometimes invite their customers to buy and use methamphetamine at the location of the sale. Sellers of methamphetamine who also use it do not cut the methamphetamine that they use; they only cut the methamphetamine they sell to their customers.

Deputy Madrid explained that dealers sometimes use females as "runners" because if they are detained by male officers while in possession of methamphetamine, they would not be as thoroughly searched as a male due to concerns about any appearance of impropriety. For that reason, dealers often have females conceal methamphetamine on their person.

Based on the same hypothetical facts and circumstances that caused Deputy Madrid to conclude that the methamphetamine found in the trailer was possessed for sale, he also concluded that the trailer in the hypothetical based on the search of defendant's trailer was being used for the sale or use of methamphetamine.

---

[5] Deputy Madrid also opined that the methamphetamine found in the trailer in the hypothetical was based on the search of McMullen's trailer was also possessed for sale.

**PROCEDURAL BACKGROUND**

In an information, the Los Angeles County District Attorney charged defendant in count 1 with possession for sale of a controlled substance in violation of Health and Safety Code section 11378 and in count 2 with maintaining a place for selling or using a controlled substance in violation of Health and Safety Code section 11366.[6] Defendant pleaded not guilty.

Following trial, the jury found defendant guilty on counts 1 and 2. The trial court sentenced defendant on count 1 to eight months to run consecutive to a three-year term on a probation violation in case number MA047055, for an aggregate sentence of three years, eight months.[7] The trial court also imposed a concurrent two-year term on count 2 but stayed that sentence pursuant to Penal Code section 654. The trial court awarded defendant a total of 267 days of presentence custody credit comprised of 179 days actual custody credit and 88 days of conduct credit.[8]

---

[6] Codefendant McMullen was also charged in counts 1 and 2, as well as in count 3, possession of a deadly weapon in violation of Penal Code section 12020, subdivision (a)(1). Prior to the completion of testimony, McMullen pleaded no contest to all three counts pursuant to a plea bargain.

[7] As the Attorney General notes, the abstract of judgment shows only the eight month sentence imposed in this case. As defendant notes in his supplemental brief, California Rules of Court, rule 4.452 provides that when consecutive determinate terms are imposed in two cases, a single aggregate term must be pronounced, and sentences on all determinately sentenced counts in a case must be combined as though they were all counts in the current case. Therefore, the abstract of judgment should be corrected to show the three-year term imposed in the probation violation case, as well as the consecutive eight month term in this case, for an aggregate term of three years, eight months.

[8] The abstract of judgment does not reflect that any custody credits were awarded. As discussed below, it must be amended to show the correct amount of custody credits to which defendant is entitled.

6

## DISCUSSION

### A.    Admission of Text Message

Defendant contends that the trial court committed prejudicial error when it admitted testimony about the text message from codefendant McMullen advising that the police were searching "Cowboy's" trailer. According to defendant, because the owner of the cell phone on which the message was found was not identified, the coconspirator exception to the hearsay rule did not apply and the message was not relevant to defendant's consciousness of guilt.

Assuming, arguendo, that defendant is correct and the text message should not have been admitted, defendant failed to demonstrate that such error was prejudicial. (*Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*) [error will be deemed harmless if reviewing court can conclude beyond a reasonable doubt that a rational jury would have found defendant guilty absent the error]; *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*); and *People v. McKinnon* (2011) 52 Cal.4th 610, 665.) At best, the text message supported an inference that McMullen was trying to warn someone in defendant's trailer that police had arrived and were searching another trailer. From that inference, the jury arguably could have concluded that McMullen was aware of the sale and use of methamphetamine in defendant's trailer. But even without the message, the other evidence of the sale and use of methamphetamine in defendant's trailer was strong and compelling. The baggie under the couch contained 1.78 grams, substantially more than would be possessed for personal use. On the table near the couches where defendant and the two females were sitting, deputies recovered a glass tray with powdery residue, two scales, four large baggies each containing unused individual baggies, cash, and "pay owe" sheets. One of the two females had a baggie of methamphetamine in her pocket and there was a surveillance monitor displaying a live feed of the southern entrance to the trailer park. And, all of this evidence was found in defendant's trailer based on a search warrant that had issued because two men arrested for methamphetamine possession told police they bought it from defendant at his trailer.

7

In light of all the other evidence in support of the two charged crimes, the text message was, at best, cumulative and unnecessary, such that even if it had been excluded, a rational jury would have found defendant guilty of the charged crimes.

### B. Evidence Admissible Only as to Codefendant

In his opening brief,[9] defendant next contends that he received ineffective assistance of counsel because his trial counsel failed to request limiting instructions concerning the use of the evidence against codefendant McMullen once he pled no contest and was no longer a part of the trial. Defendant's ineffective assistance contention implicitly concedes that his trial counsel was under an affirmative duty to request the limiting instructions in issue, but failed to do so. That concession, in turn, raises an issue as to whether defendant forfeited the issue by failing to raise it in the trial court.

But even assuming, without deciding, that defendant did not forfeit that issue, he again has failed to show that he was prejudiced by his trial counsel's failure to request the limiting instructions. (*Chapman, supra,* 386 U.S. at p. 24; *Watson, supra,* 46 Cal.2d at p. 836.) As discussed above, the evidence of defendant's guilt on the two charged crimes was strong and compelling. Thus, the additional evidence concerning the search of McMullen's trailer—which, at best, supported an inference that more than one trailer in the park was being used for methamphetamine sales—was weak on the issue of defendant's guilt and cumulative in any event. Therefore, even if the jury had been instructed to disregard the evidence relevant only to the charges against McMullen, a

---

[9]   In his reply brief, defendant appears to change theories on appeal and argue that the trial court's failure to strike the evidence against McMullen and give limiting instructions concerning that evidence was prejudicial error, an argument that suggests the trial court had a sua sponte duty to strike the evidence and instruct the jury. Because we are not required to address contentions raised for the first time in a reply brief (*People v. Tully* (2012) 54 Cal.4th 952, 1075), we will not entertain defendant's new theory on appeal.

rational jury would nevertheless have concluded that defendant was guilty of the two charged crimes.

### C.  Instructional Error

Defendant also argues that the trial court incorrectly instructed the jury on the elements of count 2—maintaining a place for the sale or use of a controlled substance. Citing *People v. Franco* (2009) 180 Cal.App.4th 713, 718-719, defendant argues that the instruction on count 2, a 2003 version of CALJIC 12.08, did not inform the jury that in order to commit the crime charged in count 2, the defendant must allow others to use the controlled substance because it is not a violation of Health and Safety Code section 11366 for the defendant to use the substance himself.

The Attorney General agrees that the trial court incorrectly instructed the jury with CALJIC 12.08, but argues that the erroneous instruction was not prejudicial. We agree.

An instructional error that improperly omits an element of an offense, or that raises an improper presumption, is subject to harmless error analysis. (*People v. Flood* (1998) 18 Cal.4th 470, 502-503.) As noted, the error will be deemed harmless if the reviewing court can conclude beyond a reasonable doubt that a rational jury would have found defendant guilty absent the error. (*Chapman, supra,* 386 U.S. at p. 24; see *Watson, supra,* 46 Cal.2d at p. 836 [California harmless error standard—reasonable probability test].)

Here, based on the items recovered from defendant's trailer, the expert concluded that the male in the hypothetical possessed the methamphetamine found in his trailer for sale, not simply for personal use. Similarly, based on the same evidence, including that one of the two females found in the trailer with the male in the hypothetical had methamphetamine on her person and both women did not live in the male's trailer, the expert concluded that the male in the hypothetical was providing his trailer to the two women as a place to use or sell methamphetamine. Because the hypothetical questions were based on the items recovered from defendant's trailer, the expert's opinions supported a reasonable inference that defendant was guilty of the charged crimes. Given

9

the strength of the evidence, it is clear that a rational jury would have found defendant guilty on count 2 even if the jury had been correctly instructed on the elements of count 2.

### D.    Custody Credits

Defendant contends in his supplemental brief that under the Penal Code section 2933 as of the time of the offense—July 11, 2011—and section 4019 as of the time he was sentenced—January 6, 2012—he was entitled to two days of conduct credit for every two days spent in actual custody.  Under this formula for calculating his conduct credits, defendant contends that he was entitled to 178 days of conduct credit, based on the 179 days of actual custody credit awarded by the trial court.  Because the trial court awarded defendant only 88 days of conduct credit, defendant argues that he was entitled to 90 additional days of conduct credit.  The Attorney General agrees with defendant.

Based on our review of the parties' briefs and applicable law, we agree that defendant was entitled to an additional award of 90 days of conduct credit, for a total award of conduct credit of 178 days.  Accordingly, the abstract of judgment must be corrected to reflect this award.

## DISPOSITION

The judgment of conviction is affirmed, but the matter is remanded to the trial court with instructions to amend the abstract of judgment to reflect that defendant was sentenced on the probation violation to a term of three years and in this case to a consecutive term of eight months, for an aggregate term of three years, eight months and to reflect that he was awarded 178 days of conduct credit, in addition to the 179 days of actual custody credit, for a total award of 357 days of custody credit.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

MOSK, J.

We concur:

ARMSTRONG, Acting P. J.

KRIEGLER, J.

11