Filed 4/1/14  P. v. Lu CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B248095 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. GA088166) |
| v. | |
| WEI CHIEH LU, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael D. Carter, Judge.  Affirmed.

Gail Ganaja, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, and James William Bilderback II, Supervising Deputy Attorney General, for Plaintiff and Respondent.

_____

Defendant and appellant Wei Chieh Lu was convicted in count 1 of second degree robbery of Wen Wang (Pen. Code, § 211),[1] and in counts 2 and 3 of assault with a deadly weapon, against Wang and Hoa Luong, respectively (§ 245, subd. (a)(1)). The jury found defendant personally used a deadly weapon in count 1 (§ 12022, subd. (b)(1)), and he inflicted great bodily injury in counts 1 and 2 upon Wang (§ 12022.7, subd. (a)).[2]

Defendant was sentenced to a total of eight years in state prison. In count 1, the trial court imposed the middle term of three years, with a one-year enhancement for use of a deadly weapon and a three-year enhancement for great bodily injury. In count 2, the trial court imposed and stayed pursuant to section 654 the one-year term with the three-year enhancement for great bodily injury. In count 3, the trial court imposed a consecutive one-year term.

Defendant's sole contention is that his conviction for robbery in count 1 should be reversed because the inclusion of optional bracketed language in Judicial Council of California Criminal Jury Instructions (2012-2013) CALCRIM No. 1600 led the jury to erroneously believe it could convict defendant of robbery even if he never severed possession of the allegedly stolen property from the victim. We affirm the judgment.

## FACTS

**Prosecution**

On the afternoon of November 18, 2012, 60-year-old Wen Wang was walking down a residential street in her neighborhood, carrying her groceries and purse. Defendant attacked Wang from behind, hitting the back of her head with a hammer, and

---

[1]     Unless otherwise indicated, all statutory references are to the Penal Code.

[2]     The jury was unable to reach a verdict on the allegation that defendant inflicted great bodily injury upon Luong in count 3. The trial court dismissed the allegation after the prosecution elected not to retry it.

struggling with Wang for her purse. When Wang continued to hold onto the purse, defendant hit her with the hammer a second time. Wang cried for help. She let go of the purse, and defendant ran away with it.

Hua Luong heard Wang screaming. He ran out of his driveway where he had been washing his car and saw defendant dragging Wang on the ground as she held onto her purse. Luong could see blood on Wang's head. Luong ran over to assist Wang. When he reached defendant, the purse was lying on the ground. Wang was not holding it, and Luong could not tell whether defendant was still holding it or not. Luong jumped on defendant from behind in an attempt to disarm him. Luong punched defendant in the head three or four times. Then defendant struck Luong with the hammer, causing Luong to fall to the ground.

Michael Lee saw defendant and Wang struggling over something as he was driving by. Lee stopped his car and ran toward them. As he approached, he could see them fighting over a purse. Lee witnessed defendant hit Wang with a hammer. He then saw Luong jump onto defendant's back, as Wang fell to the ground. Lee stated that defendant was not holding the purse when Luong tackled him from behind. Lee saw defendant strike Luong with the hammer several times as Luong struggled to take it from him. Lee grabbed both men. Defendant dropped the hammer, and Luong fell to the ground.

Defendant attempted to flee the scene, but Lee chased him down and put him in a choke hold. Another resident, Kevin Lau, helped Lee bring defendant back to the scene. Lau's wife and another neighbor called the police. At some point, the neighbors gave Wang's purse back to her. Wang testified that her neighbors "took the purse back" from defendant.

Lee and Lau held defendant down until the police arrived and arrested defendant. Officers recovered a 13-ounce claw hammer with blood on it at the scene near Luong's feet.

Wang and Luong were taken to the hospital. Wang had wounds to her forehead and the back of her head that required stitches. She suffered headaches and dizziness for

3

a few months after the incident, and required pain medication and sleeping pills. Luong also suffered a head wound. He was treated at the hospital and prescribed pain medication. Luong was able to return to normal activities after a day's rest.

**Defense**

Defendant testified in his own defense. He explained that he was out walking and accidentally stepped on Wang's foot. She glared at him and cursed, swinging her purse at defendant when he asked what she was staring at. He defended himself from the purse with his forearm and palm. Wang then grabbed defendant's shirt, and Luong tackled him from behind, causing defendant to fall to the ground. Luong and Wang hit him several times before defendant freed himself and ran. Luong and Wang tripped over each other when they tried to chase after him. Defendant was not able to get far because Lee grabbed him and held him down. He was arrested and interviewed at the police station.

Defendant denied telling the officers who interviewed him that he planned to rob someone because he could not find a job and needed money to pay his rent. Defendant did not tell police that he approached Wang, hit her with the hammer, and tried to take her purse. He did not tell the officers that he bought a hammer the previous day. Defendant denied any knowledge of how the victims sustained their injuries. He told the officers that he was just out for a walk.

**Rebuttal**

The prosecution played a video of defendant's police interview, which was interpreted from Mandarin into English. In the interview, defendant told officers he was from Taiwan and had lived in the United States on a tourist visa for about four months. Defendant had spent most of the money he brought with him. He planned to work here but was unable to get a job. He wanted to leave the United States but did not have enough money to buy a plane ticket home, so he decided to rob someone. He was walking in

Wang's neighborhood looking for a potential victim when he noticed Wang walking by herself carrying an expensive purse. He grabbed the purse and would have run away, but someone showed up and attacked him. When asked if he had possession of the purse, he answered that he did. Defendant got the hammer out of his bag when Luong tackled him. He only hit Luong and Wang once each. He would not have hit Wang, but she screamed and fought back. He did not hit either of the victims in the head. When asked if robbery was a crime in Taiwan, he said yes. When asked if he understood it was a crime in the United States, he answered no, because he had seen robberies in a lot of movies and it didn't appear to be against the law. Defendant said that he regretted his crimes. When asked if he was aware that Wang had been hospitalized, he answered that he did not know about her hospitalization and did not think she would be hurt by what happened.

## DISCUSSION

Defendant contends the trial court erred in instructing the jury pursuant to a bracketed portion of CALCRIM No. 1600 that two or more people may possess something at the same time, because the optional language misled the jury into believing it could convict him of robbery even if he and Wang had simultaneous possession of her purse throughout their struggle. The Attorney General responds that defendant forfeited his contention by failing to raise it before the trial court. Alternately, the Attorney General argues the instruction was a correct statement of the law, and even if the instruction had been given in error, reversal is not warranted because of the overwhelming evidence of defendant's guilt.

### Standard of Review

"We review de novo whether a jury instruction correctly states the law. [Citations.] Our task is to determine whether the trial court '"fully and fairly instructed on the applicable law." [Citation.]' [Citation.] When instructions are claimed to be

5

conflicting or ambiguous, 'we inquire whether the jury was "reasonably likely" to have construed them in a manner that violates the defendant's rights.' [Citation.] We look to the instructions as a whole and the entire record of trial, including the arguments of counsel. [Citations.] We assume that the jurors are ""'intelligent persons and capable of understanding and *correlating* all jury instructions . . . given.'"" [Citation.] If reasonably possible, we will interpret the instructions to support the judgment rather than to defeat it. [Citation.] Instructional error affects a defendant's substantial rights if the error was prejudicial under the applicable standard for determining harmless error. [Citations.]" (*People v. Franco* (2009) 180 Cal.App.4th 713, 720.)

We reverse only if the trial court erred and the error "resulted in a miscarriage of justice, making it reasonably probable the defendant would have obtained a more favorable result in the absence of error." (*People v. Andersen* (1994) 26 Cal.App.4th 1241, 1249.)

**CALCRIM No. 1600**

The trial court instructed the jury on second degree robbery pursuant to CALCRIM No. 1600 as follows:

"The defendant is charged in Count ONE with robbery in violation of Penal Code section 211. [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant took property that was not his own; [¶] 2. The property was taken from another person's possession and immediate presence; [¶] 3. The property was taken against that person's will; [¶] 4. The defendant used force or fear to take the property or to prevent the person from resisting; [¶] AND [¶] 5. When the defendant used force or fear to take the property, he intended to deprive the owner of it permanently. [¶] The defendant's intent to take the property must have been formed before or during the time he used force or fear. If the defendant did not form this required intent until after using the force or fear, then he did not commit robbery. [¶] If you find the defendant guilty of robbery, it is robbery of the second degree. [¶] A person *takes* something when

6

he or she gains possession of it and moves it some distance.  The distance moved may be short.  [¶]  Two or more people may possess something at the same time."

The final sentence of the instruction is optional.  In the raw version of the instruction, the sentence is bracketed, alerting the trial court that it only need be given when relevant to the facts of the case.

**Forfeiture**

We do not agree with the Attorney General's argument that the issue is forfeited. Where an instruction is a correct statement of law *and responsive to the evidence*, the defendant must object or seek a modification in order to preserve the issue for appeal. (*People v. Hart* (1999) 20 Cal.4th 546, 622; *People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1163.)  The portion of CALCRIM No. 1600 that defendant focuses on—"Two or more people may possess something at the same time."—accurately reflects California law.  (*People v. Ramos* (1982) 30 Cal.3d 553, 589 ["if force or fear is applied to two victims in joint possession of property, two convictions of robbery are proper"], overruled on other grounds in *California v. Ramos* (1983) 463 U.S. 992, 1002-1114.) However, the final sentence of the instruction is not responsive to the evidence, because this case presents no issue of joint possession by two victims.  The only victim in possession of the purse was Wang.  The latter portion of the instruction, as given, was therefore mere surplusage.

**Analysis**

We reject defendant's contention that CALCRIM No. 1600 is ambiguous because of the juxtaposition of language that "[t]wo or more people may possess something at the same time" with the sentence that provides "[a] person *takes* something when he or she gains possession of it and moves it some distance."  Defendant reasons that these phrases, read together, might lead a jury to believe a conviction of robbery was permissible if he

7

and Wang were both holding onto the purse at the same time, when the law requires complete severance from Wang's possession, such that the purse came under defendant's control.

Contrary to defendant's argument, the concepts of possession of property by more than one victim and asportation of that property are distinct and there is no ambiguity. Inclusion of the last sentence of CALCRIM No. 1600 in this case was merely surplus language, which would be rationally disregarded by the jury. (*People v. Mejia* (2012) 211 Cal.App.4th 586, 633; see CALCRIM No. 200 [admonishing the jury that "[s]ome of these instructions may not apply, depending on your findings about the facts of the case" and "follow the instructions that do apply to the facts as you find them"].)

Defendant argues, however, that the ambiguity in the instruction is demonstrated in the prosecutor's argument to the jury. Defendant cites to the following portion of the prosecutor's argument:

"Defense counsel talked about what it means to take possession of something. A person takes possession when he or she -- takes something when he or she gains possession of it and moves it some distance. The distance moved may be short. [¶] The jury instruction -- and this is regarding the jury instruction on robbery. The jury instruction on robbery also tells you that -- it tells you that two or more people may possess something at the same time. And that's jury instruction [CALCRIM No.] 1600. . . . [¶] Two or more people may possess something at the same time. So what's going on here? Every witness tells you there is a struggle over the purse. The witness turns around, there is a back and forth, there is a pulling. [¶] Actually, Michael Lee says when he was watching that he saw the defendant dragging the woman by her purse while she is still clutching onto it. That purse is moving. He's got possession of it. It can be argued that at that same moment she also has possession, but two or more people may possess something at the same time. [¶] There is a struggle. There is movement. He's got a grip on it. And she actually let's go of it when he hits her the second time."

It is not entirely clear that the prosecutor's argument related the concept of possession of property by multiple victims to the asportation element of robbery. The

8

final statement by the prosecutor in that portion of the argument clearly points to the evidence that Wang let go of her purse by the time the assault ended, which would show the element of asportation.

Assuming the instruction is ambiguous, or the prosecutor simply failed to correctly articulate the purpose of the last sentence of the instruction, the error is harmless under any standard of review. (*Chapman v. California* (1967) 386 U.S.18, 23-24; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

"Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.) Robbery is a form of aggravated larceny. (*People v. Gomez* (2008) 43 Cal.4th 249, 254.) "Larceny requires the taking of another's property, with the intent to steal and carry it away. [Citation.] 'Taking,' in turn, has two aspects: (1) achieving possession of the property, known as 'caption,' and (2) carrying the property away, or 'asportation.' [Citations.]" (*Id*. at pp. 254-255, fn. omitted.) "'The element of asportation is not satisfied unless it is shown that "the goods were severed from the possession or custody of the owner, and in the possession of the thief, though it be but for a moment."' [Citation.]" (*People v. Khoury* (1980) 108 Cal.App.3d Supp. 1, 4.) "'[N]o great movement is required, and it is not necessary that the property be taken out of the physical presence of the victim.' [Citation.] '[S]light movement' is enough to satisfy the asportation requirement. [Citations.] . . . [I]ndeed, even where the only movement was the victim placing money into a paper bag, courts have found sufficient asportation to justify a conviction for robbery. [Citation.]" (*People v. Hill* (1998) 17 Cal.4th 800, 852-853.)

The evidence is overwhelming that Wang lost control of her purse at some point in the attack by defendant, which satisfies the asportation requirement of robbery. There is no evidence that Wang was the last person to possess the purse before it fell to the ground. Wang testified that defendant took the purse from her after hitting her with the hammer the second time. She also testified that her neighbors took the purse from defendant and returned it to her. In his interview with police immediately following the incident, defendant stated that he had the purse in his possession and was planning to run,

9

but was stopped when Luong tackled him.  Neither Luong nor Lee saw the purse fall and could not verify definitively whether defendant or Wang was last holding it, but both saw the intense struggle between defendant and Wang.  The younger male defendant hit the older female victim twice with a hammer and dragged her along the sidewalk as she clung to the purse—strong circumstantial evidence that defendant was the victor and successfully wrested the purse from Wang prior to dropping it beyond her reach.  In light of the abundant evidence that defendant attacked Wang viciously and took her purse away from her, any error is harmless.[3]

## DISPOSITION

The judgment is affirmed.

KRIEGLER, J.

We concur:

TURNER, P. J.                                    MINK, J.[*]

---

[3]     Because we conclude defendant was not prejudiced, his argument that defense counsel rendered ineffective assistance for failing to object to CALCRIM No. 1600 as given necessarily fails, and we need not address it here.

[*]     Retired judge of the Los Angeles County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.