Filed 3/12/13  P. v. Cornejo CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B238945 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA094056) |
| v. | |
| MARCO ANTONIO CORNEJO et al., | |
| Defendant and Appellant. | |

APPEAL from the judgments of the Superior Court of Los Angeles County, Bruce F. Marrs, Judge.  Affirmed.

Lise M. Breakey, under appointment by the Court of Appeal, for Defendant and Appellant Marco Antonio Cornejo.

Mark Yanis, under appointment by the Court of Appeal, for Defendant and Appellant Alfonso Henry Talamantes.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, John Yang, Deputy Attorney General, for Plaintiff and Respondent.

_____

The jury found defendants and appellants Marco Antonio Cornejo and Alfonso Henry Talamantes guilty in count 1 of home invasion robbery (Pen. Code, §§ 211, 213, subd. (a)(1)(A)),[1] in count 2 of first degree burglary of a residence with a person present (§§ 459, 667.5, subd. (c)), and in count 3 of assault with a deadly firearm (§ 245, subd. (a)(2)). The jury found true the allegations that a principal was armed within the meaning of section 12022, subdivision (a)(1) as to all counts as to both defendants; that Cornejo personally used a firearm within the meaning of section 12022.53, subdivision (b) as to count 1; and that Cornejo personally used a firearm within the meaning of section 12022.5 as to counts 2 and 3. The section 12022.53 (count 1) and section 12022.5 (counts 2 and 3) allegations were found not true as to Talamantes. In a separate proceeding, the trial court found that Talamantes had suffered two serious or violent prior felony convictions under the three strikes law. (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i).)

The trial court sentenced Cornejo to the upper term of nine years as to count 1, enhanced by ten years pursuant to section 12022.53, subdivision (b). The court imposed the midterm of four years on count 2, the midterm of three years on count 3, the midterm of four years as to both of the section 12022.5, subdivision (a) allegations (counts 2 and 3), and stayed the sentences pursuant to section 654. One-year enhancements were imposed pursuant to section 12022, subdivision (a)(1) and stayed under section 654.

Talamantes was sentenced to the base term of 25 years to life as to count 1, plus one year for the firearm enhancement (§ 12022, subd. (a)(1)), and identical terms for counts 2 and 3, which the trial court stayed pursuant to section 654.

We appointed counsel for defendants on appeal. Appointed counsel for Cornejo filed an opening brief raising no issues, but requesting this court to independently review the record for arguable contentions pursuant to *People v. Wende* (1979) 25 Cal.3d 436. Cornejo was advised of his right to file a supplemental opening brief. Cornejo filed a supplemental brief, in which he contends the testimony of Melesio Arteaga is not credible

---

[1]     Unless otherwise indicated, all statutory references are to the Penal Code.

because Arteaga agreed to be a witness for the prosecution in exchange for a possible reduction in his sentence. Cornejo also contends the trial court improperly admitted Arteaga's testimony that a message threatening him was written on his younger brother's skateboard. Cornejo requests that new counsel be appointed to him to review the record for arguable appellate contentions.

Talamantes contends the trial court erred in instructing the jury with CALJIC No. 3.03, withdrawal of an aider and abettor.

We find no merit to the issues raised by Cornejo, and our independent review of the record reveals no arguable appellate contentions. Talamantes's argument fails to demonstrate prejudicial error. We affirm both judgments.

**FACTS**

Arteaga testified that he (age 19), Cornejo (age 22), and Talamantes (age 35) were drinking at Cornejo's house on the evening of April 22, 2011, and each had several beers. Arteaga and Cornejo had smoked marijuana earlier that evening. Arteaga felt intoxicated, and Cornejo appeared intoxicated to him. Talamantes, who Arteaga described as the leader in their group, suggested that they rob a man known as "Panda," who was living with Cornejo's neighbor, Kathleen Feamster. Cornejo had known his neighbor for over a decade and had smoked marijuana at her house on numerous occasions. The men knew that drug deals commonly occurred at Feamster's house. They intended to take money and marijuana from Panda. They discussed the idea and Cornejo urged that they should "just do it." Cornejo then went into the back of the house and brought out guns for the men to use. Cornejo took a pistol, Talamantes took a shotgun, but Arteaga declined the offer of a gun. All three men then went to Feamster's house.

Mark Rodriguez testified that he drove to Feamster's house around midnight that night to hang out with his friends. As he approached the house, he saw Cornejo walking down the street. The two had a prior run-in, during which Cornejo damaged Rodriguez's car. Cornejo coughed to get Rodriguez's attention and then gestured and lifted his shirt.

3

Rodriguez ignored him and went inside. Panda, Melinda Almada, and a girl named Lexi were already there.[2]

About 10 to 15 minutes after Rodriguez arrived, Cornejo, Talamantes, and Arteaga entered the house through an unlocked door. Rodriguez and Panda were sitting in the living room and Almada and Lexi were returning from the bathroom. Feamster was in her bedroom. Cornejo and Talamantes demanded money and cell phones from Rodriguez and Panda. Cornejo pointed a small semi-automatic handgun at Rodriguez. Arteaga testified that Talamantes held the shotgun inside his sweatpants but did not take it out or point it at anyone. Either Talamantes or Cornejo took Rodriguez's cell phone.[3] Rodriguez testified that "they" took Panda's laptop. Arteaga testified that Cornejo and Talamantes took $300-$600 in cash and some marijuana.

At that point, Arteaga and Talamantes ran outside. As they were leaving, Rodriguez, Almada, Feamster, and Arteaga heard a gunshot. Rodriguez saw a flash of light outside. Cornejo was still inside, pointing the gun at Rodriguez, but he did not fire his weapon. Cornejo left the house.

Feamster did not hear anything prior to the gunshot because she was in her bedroom yelling at her roommate. After Feamster heard the gunshot, Rodriguez told her what had happened. Feamster went to Cornejo's mother's house to talk to her about the incident. While Feamster was talking to Cornejo's mother, Cornejo's brother Alejandro threatened to "fuck her up," if she called the police. Rodriguez called the police when Feamster came back to the house. Panda, Almada, and Lexi left before the police arrived. Panda was afraid he would get shot over the incident.

The police arrived and set up a perimeter to search for suspects. Officer William Johnson saw someone running away as he approached. He found a gray sweatshirt and a

---

[2] Almada testified that she went to the house at 11:00 or 11:30, and that Rodriguez was already there.

[3] Rodriguez and Arteaga testified that Talamantes took the phone. Almada testified Cornejo took the phone.

black bandana in the bed of a truck nearby.  Cornejo and Talamantes were apprehended, and Rodriguez identified both in a field show-up from 50-70 feet away.  Rodriguez told police that Cornejo had been wearing a gray sweatshirt, and Talamantes had been wearing a black bandana tied around his arm.  Arteaga testified that Cornejo had a black bandana with him, but he did not know if Cornejo had been wearing it.  Almada later identified Cornejo in a photo line-up but could not identify Talamantes.  The police did not recover any weapons, cell phones, laptops, drugs or money.

Arteaga was arrested the next morning and confessed to the police.  About a month before the trial, he entered into an open plea bargain.  Approximately two weeks before the trial, his younger brother's skateboard was vandalized.  The writing on it threatened Arteaga with death.

Cornejo's brother Alejandro testified in his defense.  Alejandro had been with friends on the evening of April 22, 2011.  He returned home, where he lived with Cornejo and his mother, around 3:00 a.m.  When he got home, Feamster confronted him about Cornejo.  After she left, he got a call from Arteaga, who asked Alejandro to pick him up from his girlfriend's house.  Alejandro picked up Arteaga, who asked him to take him to his sister's house.  Arteaga kept saying that "he fucked up" and acted weird and fidgety.  Alejandro thought he was under the influence of methamphetamine.

Alejandro testified he had never seen a gun at his mother's house, other than his own BB gun.  He admitted to a prior conviction for misdemeanor domestic violence.

Talamantes did not present a defense.

## DISCUSSION

### *Cornejo's Appeal*

Cornejo's argument that Arteaga's testimony should have been suppressed because, as a former codefendant, he was not credible and Arteaga testified under the pressure of a possible reduction in his sentence, is without merit.  The introduction of

5

accomplice testimony does not violate due process. (See *United States v. Augenblick* (1969) 393 U.S. 348, 352 ["When we look at the requirements of procedural due process, the use of accomplice testimony is not catalogued with constitutional restrictions."].) The fact that a witness may receive a reduction in his sentence may be considered by the jury (see *People v. Mendoza* (2011) 52 Cal.4th 1056, 1084 (*Mendoza*)), but it is the exclusive function of the trier of fact to assess the credibility of witnesses and draw reasonable inferences from the evidence (*People v. Young* (2005) 34 Cal.4th 1149, 1181).

The jury was informed that Arteaga was an accomplice and that his testimony should be treated with caution. Arteaga testified that he admitted all three charges against him with respect to the incident and made an open plea for a possible reduced sentence. The trial court instructed the jury that Arteaga was an accomplice under CALJIC No. 3.16 (witness accomplice as a matter of law) and instructed the jury as to how Arteaga's credibility should be evaluated under CALJIC Nos. 3.18 (testimony of an accomplice to be viewed with care and caution), 3.11 (testimony of an accomplice or codefendant must be corroborated), 3.12 (sufficiency of evidence to corroborate an accomplice), and 2.20 (believability of witness). Arteaga's testimony was corroborated by the testimony of other eyewitnesses. Arteaga's testimony is therefore not "inherently improbable," and it is not within the scope of this court's authority to reevaluate his credibility. (*In re Frederick G.* (1979) 96 Cal.App.3d 353, 366-367.) In the absence of any evidence to the contrary, we presume the jury understood and followed the trial court's instructions. (See *People v. Hernandez* (2010) 181 Cal.App.4th 1494, 1502.)

Cornejo's argument that the trial court improperly admitted Arteaga's testimony regarding the skateboard is also without merit. A witness's fear of retaliation is relevant to his credibility. (*Mendoza*, *supra*, 52 Cal.4th at pp. 1084-1085.) The source of the threat makes no difference because the witness may be testifying under fear, regardless of whether the threat comes from the defendant or someone who supports the defendant. (*Id.* at p. 1085.) Moreover, the jury is entitled to know the facts that give rise to the fear so that it may evaluate the seriousness of the witness's fear and the impact it would have

on the witness's testimony, if any. (See *ibid*.) Evidence of the threat was relevant to Arteaga's testimony, and the trial court did not err in admitting it.

In addition to consideration of the issues raised in Cornejo's supplemental brief, we have examined the entire record, and we are satisfied that Cornejo's attorney has fully complied with her responsibilities and that no arguable issues exist. (*Smith v. Robbins* (2000) 528 U.S. 259.) Cornejo's request for a new attorney on appeal is denied.

### *Talamantes's Appeal*

Talamantes contends the trial court erred by instructing the jury on an aider and abettor's withdrawal from participation in a crime because it was not part of the defense's theory of the case, and there was no evidence presented that Talamantes withdrew from the crime. He argues giving the instruction was confusing to the jury because the instruction assumes that Talamantes had criminal culpability from which he could withdraw, in violation of his right to due process. The Attorney General counters that Talamantes forfeited his contention by failing to raise it before the trial court. Alternately, the Attorney General concedes that the instruction was unsupported by the evidence but argues that because the evidence of Talamantes's guilt is strong, reversal is not warranted.

A defendant does not forfeit a claim of instructional error where the instruction was an incorrect statement of the law or the defendant's substantial rights were affected. (§ 1259; *People v. Franco* (2009) 180 Cal.App.4th 713, 719.) Ascertaining whether error occurred and was prejudicial necessarily requires that we review the merits of the defendant's claim. (*Ibid*.) In reviewing the claim, we reverse only if the trial court erred and the error "resulted in a miscarriage of justice, making it reasonably probable the defendant would have obtained a more favorable result in the absence of error." (*People v. Andersen* (1994) 26 Cal.App.4th 1241, 1249.)

"A trial court must instruct the jury, even without a request, on all general principles of law that are '"closely and openly connected to the facts and that are

7

necessary for the jury's understanding of the case." [Citation.] . . .' [Citation.]" (*People v. Burney* (2009) 47 Cal.4th 203, 246.) "'An instruction should contain a principle of law applicable to the case, expressed in plain language, indicating no opinion of the court as to any fact in issue.' [Citations.]" (*People v. Wright* (1988) 45 Cal.3d 1126, 1135.) This duty extends to defenses if the defendant is relying on a specific defense, or if the specific defense is supported by substantial evidence and does not conflict with the defense's theory of the case. (*People v. Maury* (2003) 30 Cal.4th 342, 424.) We review independently whether substantial evidence supported a defense. (*People v. Shelmire* (2005) 130 Cal.App.4th 1044, 1055.)

Here, the trial court instructed the jury under CALJIC No. 3.03 (termination of liability of aider and abettor) in relevant part:"

"Before the commission of the crimes charged in counts 1, 2, and 3, an aider and abettor may withdraw from participation in those crimes, and thus avoid responsibility for those crimes by doing two things: First, he must notify the other principals known to him of his intention to withdraw from the commission of that crime; second, he must do everything in his power to prevent its commission."

We agree with the parties that the instruction was not responsive to the evidence and need not have been given. There was no evidence to indicate Talamantes had withdrawn from any of the charged crimes. He neither notified Cornejo and Arteaga of an intention to withdraw from the crimes nor did he do anything to prevent their commission. We conclude that the error was harmless, however, because the record contained strong evidence of Talamantes's guilt.

Arteaga testified that it was Talamantes's idea to commit the robbery, that he was the oldest in the group by a decade, and the "leader." Arteaga described Talamantes taking a sawed-off shotgun from Cornejo, checking the gun to see if it was loaded, and then cleaning the bullets and re-loading the shotgun. Arteaga testified that Talamantes entered the house with the shotgun in his sweatpants and demanded that Rodriguez and Panda give him their money and cell phones. Rodriguez also testified that Talamantes demanded cell phones and money, and that he took Rodriguez's cell phone while Cornejo

8

held Rodriguez at gunpoint. All of the victims testified that they heard a shot fired outside as Talamantes and Arteaga left the house. Finally, Arteaga testified that Cornejo and Talamantes fled the scene in Talamantes's vehicle. Given the copious evidence of guilt, it is not reasonably probable that Talamantes would have obtained a more favorable result if the instruction had not been given.

Moreover, as the Attorney General highlights, the plain language of CALJIC No. 3.03 makes clear that the instruction only applies if the prosecution has first proven defendant to be a principal who participated in the crime charged as an aider and abettor, providing: "The People have the burden of proving that the defendant was a principal in and had not effectively withdrawn from participation in that crime. If you have a reasonable doubt that he was a principal in and participated as an aider and abettor in a crime charged, you must find him not guilty of that crime." The language of the instruction leaves no doubt that defendant must be proven a principal and aider and abettor before it can apply.

## DISPOSITION

The judgments are affirmed.

KRIEGLER, J.

We concur:

ARMSTRONG, Acting P. J.                    MOSK, J.

9