Filed 10/2/13  P. v. Guevara CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>BONNIE ELIZABETH GUEVARA,<br><br>    Defendant and Appellant. | F065010<br><br>(Tuolumne Super. Ct.<br>No. CRF36992)<br><br><br>**OPINION** |

-ooOoo-

### THE COURT*

APPEAL from a judgment of the Superior Court of Tuolumne County.  James A. Boscoe, Judge.

Susan K. Shaler, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kathleen A. McKenna and Amanda D. Cary, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

* Before Gomes, Acting P.J., Poochigian, J. and Peña, J.

## INTRODUCTION

Appellant/defendant Bonnie Elizabeth Guevara (defendant) was arrested after she entered a department store, placed merchandise in bags, handed the bags to two companions, and they returned the merchandise for store credit. Defendant was charged and convicted of count I, conspiracy to commit commercial burglary (Pen. Code,[1] §§ 182, subd. (a)(1), 459); count II, second degree commercial burglary (§ 459); and count III, petty theft with 10 prior theft-related offenses (§§ 484, 666). She was sentenced to three years in prison.

On appeal, defendant argues the court did not properly instruct the jury on the elements of conspiracy to commit commercial burglary; the court failed to properly respond to the jury's questions about conspiracy; and her attorney was prejudicially ineffective for failing to object to the court's alleged errors and request supplemental instructions on that count. Her arguments are based on the assertion that the jury was never instructed that defendant could only be convicted of conspiracy if defendant and her confederates agreed to commit commercial burglary *before* they entered the department store. As we will explain, the entirety of the instructions demonstrates the jury was repeatedly instructed on that precise point. Defendant also challenges the court's calculation of the restitution fine. We affirm.

## FACTS

On July 11, 2011, defendant entered Kohl's department store in Sonora. Staci Ferguson, a loss prevention officer for the store, noticed that defendant was carrying a Kohl's shopping bag. Defendant took a shopping cart, walked past the customer service desk, and went to the back of the store.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

Ferguson became concerned because defendant did not take the shopping bag to customer service and produce any merchandise for a return. Ferguson was also concerned since defendant was using a Kohl's shopping bag which had an older design.

Ferguson went into her office and watched defendant on the store's surveillance camera. Defendant selected several items of merchandise without regard to price or size. She draped these items over the front of the shopping cart, and then headed toward the fitting rooms. Ferguson contacted the fitting room associate to remove all merchandise out of the stalls before defendant entered any of the fitting rooms.

Ferguson returned to the sales floor and went to the fitting room area. Defendant arrived at the fitting rooms, entered a stall, and was the only customer. Ferguson heard the sound of a shopping bag rustling inside defendant's stall. After seven or eight minutes, defendant walked out of the stall and handed some merchandise to Ferguson, indicating she was not going to select the items. Ferguson looked into defendant's cart and saw two Kohl's shopping bags. Ferguson checked the stall, and defendant had not left anything behind.

Defendant left the fitting room and met a woman in the store. She was later identified as codefendant Traci Wood, a friend of defendant. Another store employee advised Ferguson that defendant and Wood were walking together. Ferguson also saw a man walking with defendant and Wood. He was later identified as codefendant Matthew Guevara (Matthew), defendant's adult son.[2]

At one point while she was in the store, defendant went into the bedding department. Ferguson testified that defendant selected expensive brands of sheets and pillowcases.

_____

[2] Given the similarity in last names, we will refer to codefendant Matthew Guevara as "Matthew" to avoid confusion; no disrespect is intended. According to the probation report, defendant was 60 years old and Matthew was 34 years old at the time of the trial.

Defendant and Wood walked along the store's back wall, where it was hard to watch them. Ferguson saw defendant hand a Kohl's shopping bag to Matthew. The bag contained a set of sheets and two sets of pillowcases. Matthew handed the bag to Wood.

Wood took the bag to customer service and asked to return the sheets and pillowcases even though she did not have a receipt. Matthew was standing with her at the counter. Kohl's allows customers to return items without a receipt and receive store credit, if they provide a driver's license for identification. Wood presented her driver's license. The retail value of the merchandise was $349.97. However, Wood only received a store credit for $187.66, based on the sales price of the merchandise on that day.

As Matthew and Wood left the return counter, Ferguson approached them and identified herself as a store security officer. She asked to speak to them about the return.

Ferguson believed Matthew and Wood had been on their way to meet defendant. She also believed defendant saw her speak to Matthew and Wood. As Ferguson spoke to them, defendant walked through the store, took items out of her shopping cart, and placed them back on the shelves. Defendant went to the juniors department, took a Kohl's shopping bag full of merchandise out of her cart, and slid it under a store fixture.

Defendant walked out of the store and went to her vehicle. Defendant had been in the store for over one hour, and she never made any purchases.

**The investigation**

Ferguson spoke to Matthew and Wood while they were still in the store and asked about the return of the sheets and pillowcases. Matthew said they received the items as gifts. After a few seconds, Wood said defendant pressured her into performing the fraudulent return, and they had performed the same transaction before. Wood said defendant picked up the merchandise from the sales floor and passed it to her.

Deputies from the Tuolumne County Sheriff's Department responded to the store. A deputy asked Matthew about the fraudulent return of the sheets. Matthew said he did not know anything.

4.

The deputies contacted defendant outside the building. Defendant said she had driven from Tracy to Sonora to go to the casino with Matthew and Wood. Defendant said Wood had received linen as gifts and decided to exchange the merchandise at Kohl's. Defendant had some Kohl's bags in a cart. There were some T-shirts in one of the bags, with Kohl's price tags on them. Defendant said she had purchased the shirts at another Kohl's store, and she was going to return them. Defendant did not have a receipt for the shirts.

On further questioning, defendant said she took some sheets, placed them in the Kohl's shopping bag and cart, gave the bag to Matthew and Wood, and told them to return the items. Defendant knew Kohl's allowed returns without receipts for store credit.

## DEFENSE EVIDENCE

Wood testified they drove to the casino in Sonora, then stopped at the store so defendant could return previously purchased merchandise. Wood testified they did not have any prearranged plan to take merchandise and return it for store credit, or commit any type of theft.

Wood testified that defendant went into the store, and Wood and Matthew went in later. Defendant gave a shopping bag with sheets to Wood and asked her to "take them back." Wood assumed defendant meant for her to return the items for store credit, but defendant never explained what she meant. Wood knew defendant had brought some items into the store in the shopping bag, but she did not know the contents of the bag.

Wood testified that when she was later detained in the store's security office, she saw defendant on the surveillance monitor as she placed items back onto the shelves. Wood suddenly realized that defendant had asked her to return the sheets to the shelves instead of getting store credit.

On cross-examination, Wood denied making statements attributed to her—that defendant told her to return the items without a receipt, defendant did not have the sheets

5.

before she entered the store, or that defendant pressured her into returning the items and she had done it before. Wood said she lied to Ferguson about the sheets being a gift, because she did not want to get defendant into trouble.

In rebuttal, Deputy Brouillette testified about Wood's prior statements. Wood said she entered the store with defendant and Matthew. They walked around different areas of the store and then met defendant. Defendant gave a shopping bag to Wood and Matthew and told them to return the items without a receipt. Wood said defendant did not have the sheets before she went into the store. Wood admitted she knew she was returning stolen property.

## PROCEDURAL HISTORY

Defendant and codefendants Matthew and Wood were charged with count I, conspiracy to commit commercial burglary and count II, second degree commercial burglary. Defendant and Matthew were separately charged with count III, petty theft with prior theft-related offenses, with the allegations that defendant had 10 prior theft-related convictions, and Matthew had five prior theft-related convictions. Defendant pleaded not guilty.

Wood pleaded guilty to conspiracy and second degree burglary. Defendant and Matthew were tried together before a jury, and Wood testified for the defense.

**The instructions[3]**

As to count I, the court instructed the jury with CALCRIM No. 415, as follows:

> "I've explained that[] a defendant may be guilty of a crime if he or she either [commits] the crime or aids and abets the crime. He or she may also be guilty if he or she is a member of a conspiracy.

---

[3] We must review the instructions at length because, as we will discuss in section I, *post*, defendant asserts the jury was never instructed that she could not be convicted of conspiracy unless defendant and her confederates agreed to commit commercial burglary before they entered the store.

6.

"The defendants are charged in Count I with conspiracy to commit commercial burglary .… To prove a defendant is guilty of this crime, the People must prove that, number one, *the defendant intended to agree and did agree with one or more of the other defendants to commit commercial burglary*; number two, at the time of the agreement, the defendant and one or more members of the alleged conspiracy intended that one or more of them would commit commercial burglary; number three, one … of the defendants or all of them committed at least one of the following alleged overt act[s] to accomplish commercial burglary:

"Overt act number one, *drove a vehicle* to Kohl's; overt act number two, *entered Kohl's* with empty Kohl's shopping bags; number three, overt act number three, selected items in Kohl's and concealed them in bags; overt act four, returned items that were not paid for without a receipt and obtained store credit; number five…, at least one of these acts was committed in California.

"To decide whether a defendant committed all of these acts, consider all of the evidence presented about the acts. *To decide whether the defendant and one or more of the alleged members of the conspiracy intended to commit commercial burglary, please refer to the separate instruction that I will give you on that crime.*

"*The People must prove that the members of the alleged conspiracy had an agreement and intent to commit commercial burglary.* The People do not have to prove that any of the members of the alleged conspiracy actually met or came to a detailed or formal agreement to commit that crime. An agreement may be inferred from conduct if you conclude that members of the alleged conspiracy acted with a common purpose to commit the crime." (Italics added.)

As to count II, commercial burglary, the court gave CALCRIM No. 1700:

"The defendants … are charged in Count II with commercial burglary ….

"To prove that the defendant is guilty of this crime, the people must prove that, number one, the defendant entered a commercial building; and number two, *when he or she entered a commercial building, he or she intended to commit theft*. [¶] … [¶]

"A burglary is *committed if the defendant entered with the intent to commit theft*. The defendant does not … need to have actually committed theft *as long as he or she entered with the intent to do [so]*….

7.

"The People alleged that the defendants intended to commit theft. You may not find any defendant guilty of burglary unless all of you agree he or she intended to commit that crime *at the time of the entry*." (Italics added.)

**The jury's questions**

During deliberations, the jury sent a note to the court which contained three questions. The instant record does not contain any discussions between the court and the parties as to the potential responses to these questions.

The court brought the jurors into the courtroom and addressed their first question—a request to hear a certain portion of Staci Ferguson's questions. The court stated it would provide that information to the jury.

The court then turned to the jury's second and third questions, which addressed the conspiracy and burglary charges:

"The second question, Could you explain conspiracy, in that does the act have to be planned before entering the store?

"Third question is, A note we had was conspiracy can be an agreement from conduct. Could we get clarification regarding this phrase?

"Well, ladies and gentlemen, those last two questions are dealt with in the instructions number 415, which defines conspiracy. And you are going to have to rely on the words of that instruction to reach conclusions as to those two questions. *And I think the answers—I think your questions will be answered it you reread instruction No. 415, which it doesn't have the caption on it, but it's the definition of conspiracy and the elements necessary to complete that crime*." (Italics added.)

None of the parties objected to the court's responses to the jury's questions about conspiracy. The jury did not ask any further questions.

**Verdict and sentence**

Defendant and Matthew were convicted of the three counts as charged. Defendant admitted the 10 alleged prior convictions. Matthew admitted two prior convictions, and the court dismissed duplicative allegations.

Defendant was sentenced to the upper term of three years for count III; the court stayed the terms imposed for counts I and II. The instant record is silent as to Matthew's sentence.

## **DISCUSSION**

### I.    **Conspiracy instructions**

Defendant argues the court failed to correctly instruct the jury on the elements of count I, conspiracy to commit commercial burglary. Defendant asserts that CALCRIM No. 415 failed to clarify when the parties had to enter into a conspiracy, and that the conspiracy had to occur before the parties entered the store. Defendant asserts the instruction error was exacerbated by the court's alleged failure to comply with its legal duty to respond to the jury's questions about the timing of a conspiracy, and offer supplemental instructions to clarify the point.

We note that defendant did not object to the court's instructions on conspiracy or its responses to the jury's questions. Defendant asserts that objections were not necessary since the alleged instruction errors affected her substantial rights. (§ 1259; *People v. Franco* (2009) 180 Cal.App.4th 713, 719-720.)

In the alternative, defendant argues her attorney was prejudicially ineffective for failing to object to the conspiracy instructions, object to the court's responses to the jury's questions, and request supplemental instructions on those points. Defendant argues the alleged errors were prejudicial since the evidence showed that defendant, Matthew, and Wood separately entered the store and were not acting together, but the instructions allowed the jury to convict defendant based on the conclusion that the conspiracy occurred after they entered the store.

We thus proceed to the merits of defendant's arguments.

### A.    **Review of jury instructions**

"It is well established in California that the correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an

instruction or from a particular instruction.  [Citations.]  '[T]he fact that the necessary elements of a jury charge are to be found in two instructions rather than in one instruction does not, in itself, make the charge prejudicial.'  [Citation.]  'The absence of an essential element in one instruction may be supplied by another or cured in light of the instructions as a whole.'  [Citation.]"  (*People v. Burgener* (1986) 41 Cal.3d 505, 538-539, disapproved on other grounds in *People v. Reyes* (1998) 19 Cal.4th 743, 746.)  We may not judge a single jury instruction in artificial isolation, but must view it in the context of the charge and the entire trial record.  (*People v. Haskett* (1990) 52 Cal.3d 210, 235.)

"An appellate court cannot set aside a judgment on the basis of instructional error unless, after an examination of the entire record, the court concludes that the error has resulted in a miscarriage of justice.  [Citation.]  A miscarriage of justice occurs only when it is reasonably probable that the jury would have reached a result more favorable to the appellant absent the error.  [Citations.]"  (*People v. Moore* (1996) 44 Cal.App.4th 1323, 1331.)

## B.      The jury was correctly instructed

Based on these well-settled legal principles, we find the court correctly instructed the jury on conspiracy to commit commercial burglary.  First, there is no dispute that the conspiracy to commit commercial burglary must have been formed *before* defendant and her codefendants entered the department store.  "The necessary elements of a criminal conspiracy are:  (1) an agreement between two or more persons; (2) with the specific intent to agree to commit a public offense; (3) with the further specific intent to commit that offense; and (4) an overt act committed by one or more of the parties for the purpose of accomplishing the object of the agreement or conspiracy.  [Citations.]"  (*People v. Liu* (1996) 46 Cal.App.4th 1119, 1128.)  "From the very nature of the stealth generally involved in the crime of conspiracy, it is not necessary to prove that the parties came together and reached a formal agreement [citation]."  (*People v. Massey* (1957) 151

10.

Cal.App.2d 623, 652.)  Conspiracies are almost always proven by circumstantial evidence.  (*Ibid.*)

"Burglary is defined as the entry of a structure with the intent to commit theft or any felony.  [Citation.]  Proof of intent is rarely susceptible of direct proof and may be inferred from the circumstances of the case.  [Citation.]"  (*People v. Moody* (1976) 59 Cal.App.3d 357, 363.)

Second, the entirety of the instructions clearly demonstrates the jury was repeatedly and correctly instructed on these precise points.  In CALCRIM No. 415 on conspiracy, the jury was instructed that the People had to prove as one of the elements that "the defendant intended to agree and did agree with one or more of the other defendants to commit commercial burglary."  This instruction defined two of the overt acts as involving conduct which occurred before they entered the building—driving to the store and entering with empty shopping bags.

Most importantly, CALCRIM No. 415 instructed the jury that the People had to prove "the members of the alleged conspiracy had an agreement and intent to commit commercial burglary," and that "[t]o decide whether the defendant and one or more of the alleged members of the conspiracy intended to commit commercial burglary, please refer to the separate instruction that I will give you on that crime."

The conspiracy instruction expressly directed the jury to the instruction on commercial burglary to determine the elements of conspiracy.   CALCRIM No .1700 on commercial burglary clearly stated:  "To prove that the defendant is guilty of this crime, the people must prove that, number one, the defendant entered a commercial building; and number two, *when he or she entered a commercial building, he or she intended to commit theft*."  It also stated that a burglary is committed "*if the defendant entered with the intent to commit theft*.  The defendant does not … need to have actually committed theft *as long as he or she entered with the intent to do [so]*….  [¶]  … You may not find

11.

any defendant guilty of burglary unless all of you agree he or she intended to commit that crime *at the time of the entry*." (Italics added.)

The jury was thus repeatedly and correctly instructed that a conspiracy to commit commercial burglary had to exist before defendant entered the store. The instructions were not erroneous.

### C. The court's duty to respond to jury questions

Defendant further argues the court abused its discretion when it failed to clarify the conspiracy instructions in response to the jury's two questions about that count. We again note defendant failed to object to the court's responses, but address the issue given her alternate ineffective assistance claim.

Defendant's argument is based on section 1138, which provides in relevant part: "After the jury have retired for deliberation,… if they desire to be informed on any point of law arising in the case, they must require the officer to conduct them into court. Upon being brought into court, the information required must be given in the presence of, or after notice to, the prosecuting attorney, and the defendant or his counsel, or after they have been called." (§ 1138.)

"The court has a primary duty to help the jury understand the legal principles it is asked to apply. [Citation.] This does not mean the court must always elaborate on the standard instructions. Where the original instructions are themselves full and complete, the court has discretion under section 1138 to determine what additional explanations are sufficient to satisfy the jury's request for information. [Citation.] Indeed, comments diverging from the standard are often risky. [Citation.]" (*People v. Beardslee* (1991) 53 Cal.3d 68, 97.)

"Jury questions can present a court with particularly vexing challenges. The urgency to respond with alacrity must be weighed against the need for precision in drafting replies that are accurate, responsive, and balanced. When a question shows the jury has focused on a particular issue, or is leaning in a certain direction, the court must

12.

not appear to be an advocate, either endorsing or redirecting the jury's inclination. Although comments diverging from the standard should be embarked on with care, a trial court must do more than figuratively throw up its hands and tell the jury it cannot help. It must consider how it can best aid the jury and decide whether further explanation is desirable, *or whether the reiteration of previously given instructions will suffice.* [Citation.]" (*People v. Moore*, *supra*, 44 Cal.App.4th 1323, 1331, citing *People v. Beardslee, supra,* 53 Cal.3d 68, 97; italics added.)

In this case, the court fully satisfied its duties under section 1138 and did not abuse its discretion when it responded to the jury's two questions. As we have explained, the jury in this case was repeatedly instructed on the precise point raised by defendant—that defendant and her codefendants had to agree to commit commercial burglary before they entered the department store. The court did not "throw up its hands" and fail to respond to the jury's questions. Instead, it instructed the jury to again review CALCRIM No. 415 on the elements of conspiracy. This instruction expressly directed the jury to refer to the instruction on commercial burglary, and the two instructions correctly set forth the legal elements for conspiracy to commit that offense. The court's decision to reiterate the previously given and correct instructions was not an abuse of discretion.

For the same reasons, we reject defendant's alternative ineffective assistance argument. Indeed, the record suggests defense counsel may not have objected to the court's instructions or responses to the jury's questions since the court properly referred the jury to the correct instructions. "Defense counsel does not render ineffective assistance by declining to raise meritless objections. [Citation.]" (*People v. Ochoa* (2011) 191 Cal.App.4th 664, 674, fn. 8.)

## II. Restitution fine

Defendant next contends the court erroneously calculated the $720 restitution fine based on an amended version of section 1202.4 that was not applicable to her case.

13.

Defendant argues the court violated the ex post facto provisions of the federal and state constitutions when it allegedly relied on the wrong statute.

### A. Background

Defendant was charged with committing three felonies in July 2011. She was convicted in March 2012. The probation report recommended imposition of a $720 restitution fine pursuant to section 1202.4, without comment or explanation.

On May 15, 2012, the court conducted the sentencing hearing. It followed the probation report's recommendation and imposed a restitution fine of $720 pursuant to section 1202.4, subdivision (b), without further comment. The court retained jurisdiction for victim restitution. Defendant did not object.

### B. Analysis

At the time that defendant committed the offenses in July 2011, former section 1202.4, subdivision (b)(1) provided:

> "(b) In every case where a person is convicted of a crime, the court shall impose a separate and additional restitution fine, unless it finds compelling and extraordinary reasons for not doing so, and states those reasons on the record. [¶] (1) The restitution fine shall be set at the discretion of the court and commensurate with the seriousness of the offense, but shall not be less than two hundred dollars ($200), and not more than ten thousand dollars ($10,000), if the person is convicted of a felony...." (Stats. 2011, ch. 45, § 1.)

The calculation of restitution fines in section 1202.4, subdivision (b)(1) was amended, effective January 1, 2012, as follows:

> "The restitution fine shall be set at the discretion of the court and commensurate with the seriousness of the offense, [but] shall not be less than *two hundred forty dollars ($240)* starting on January 1, 2012...." (Stats. 2011, ch. 358, § 1, italics added.)

Based on this amendment, defendant supposes the court calculated the $720 restitution fine by erroneously relying on the version of section 1202.4, subdivision (b)(1)

14.

that was not applicable to crimes committed before January 1, 2012, by multiplying $240 by her three convictions.

We again note defendant did not object to the court's imposition of the restitution fine or raise her ex post facto argument below. The rule of forfeiture is applicable to ex post facto claims, particularly where the alleged error could easily have been corrected if the issue had been raised at the sentencing hearing. (*People v. White* (1997) 55 Cal.App.4th 914, 917.)

In any event, the trial court imposed a restitution fine in this case that was well within the range of fines authorized at the time of the defendant's commission of the July 2011 offenses. There is nothing in the record to support defendant's supposition that the court relied on the most recent version of section 1202.4, subdivision (b)(1) when it imposed the $720 restitution fine. The court merely imposed the fine without comment. Since the restitution fine was in an amount authorized by the statute that was in effect at the time of defendant's commission of the offense, and there is nothing in the record indicating that the trial court imposed the fine pursuant to the amended version of the statute, defendant's ex post facto claim fails.

## DISPOSITION

The judgment is affirmed.

15.