Filed 11/20/14  P. v. Scott CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Tehama)

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>THOMAS CHARLES SCOTT,<br><br>Defendant and Appellant. | C071590<br><br>(Super. Ct. No. NCR82011)<br><br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>[CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on October 31, 2014, be modified as follows:

1.  On page 2, the second to the last sentence of the last paragraph is modified to include the text "awarding defendant one additional day of presentence custody credit to account for 2012 being a leap year."  The sentence now reads:

> We shall modify the judgment by reducing the criminal conviction assessment fee to $150, awarding defendant one additional day of presentence custody credit to account for 2012 being a leap year, and awarding defendant 192 days of presentence conduct credit, and affirm the judgment as modified.

2.  On page 12, in the last paragraph, the sentence beginning with "The trial court erred," is deleted and replaced with the following text:

Because 2012 was a leap year, defendant was entitled to one additional day of presentence confinement credit, for a total of 385 days. He is also entitled to conduct credit.

3. On page 12, in the last paragraph, the last two sentences are revised to reflect a total of 385 days of presentence confinement credit and 577 days total presentence custody credit. These sentences now read:

Utilizing the formula set forth above, defendant is entitled to 192 days of conduct credit (385 divided by 4 equals 96; 96 multiplied by 2 equals 192). Thus, the total amount of presentence custody credit should be increased from 385 to 577 days.

4. On page 13, the disposition is revised to reflect the defendant is awarded 577 days of presentence custody credits, consisting of 385 actual days and 192 conduct days. The disposition now reads:

The judgment is modified to (1) reduce the criminal assessment imposed pursuant to Government Code section 70373, subdivision (a)(1) from $175 to $150, and (2) award defendant, in lieu of the 384 days originally received, 577 days of presentence custody credits, consisting of 385 actual days and 192 conduct days. As so modified, the judgment is affirmed. The trial court is directed to (1) amend the abstract of judgment to reflect these modifications, and (2) correct section 1 of the abstract of judgment to reflect that defendant's sentence on count V is to run concurrent to his sentence on count I. The trial court shall forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

Appellant's petition for rehearing is denied.

BY THE COURT:


   BLEASE               , Acting P. J.


   DUARTE            , J.


   HOCH              , J.

Filed 10/31/14 (unmodified version)

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Tehama)

| | |
|---|---|
| THE PEOPLE, | C071590 |
| Plaintiff and Respondent, | (Super. Ct. No. NCR82011) |
| v. | |
| THOMAS CHARLES SCOTT, | |
| Defendant and Appellant. | |

A jury found defendant Thomas Charles Scott guilty of cultivating marijuana (Health & Saf. Code, § 11358; count I), possession of marijuana for sale (*id.*, § 11359; count II), possession of concentrated cannabis (*id.*, § 11357, subd. (a); count III), maintaining a place for selling or using a controlled substance (*id.*, § 11366; count IV), and possession of child pornography after having suffered a prior conviction for a sex offense (Pen. Code,[1] § 311.11, subd. (b); count V). Defendant admitted 10 prior strike convictions (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) for oral copulation while

---

[1] Further undesignated statutory references are to the Penal Code.

1

acting in concert (§ 288a, subd. (d); four convictions), sexual penetration by force (§ 289, subd. (a)(1); one conviction), and rape by force while acting in concert (§ 264.1; five convictions).

The trial court sentenced defendant to 25 years to life in state prison, consisting of: 25 years to life on count I and a concurrent 25 years to life on count V. (§ 1170.12, subd. (c)(2)(A), (B).)[2] The trial court stayed defendant's sentence as to counts II through IV pursuant to section 654. As relevant here, the trial court also awarded defendant 384 days of presentence custody credit and imposed a base sex offender fine in the amount of $500 (§ 290.3) and a conviction assessment fee in the amount of $175 (Gov. Code, § 70373).

Defendant appeals, contending: (1) the trial court erred in failing to consider his motion for a new trial; (2) there is insufficient evidence to support his conviction for maintaining a place for selling or using a controlled substance; (3) the base sex offender fine must be reduced from $500 to $300; (4) the conviction assessment fee must be reduced from $175 to $150; and (5) he is entitled to presentence conduct credit. We shall modify the judgment by reducing the criminal conviction assessment fee to $150 and awarding defendant 192 days of presentence conduct credit, and affirm the judgment as modified. We shall also remand the matter to the trial court to correct an error in the abstract of judgment.

---

[2] The trial court did not specify whether defendant's sentence on count V was to run consecutive to his sentence on count I. Where, as here, the trial court had the discretion to impose a concurrent sentence (see *People v. Hendrix* (1997) 16 Cal.4th 508, 512-515; § 667, subd. (c)(6)) but fails to direct how the term of imprisonment shall run, the term shall run concurrently (§ 669, subd. (b)).

FACTUAL AND PROCEDURAL BACKGROUND

A.     The Prosecution's Case

On June 17, 2011, Eric Clay, an investigator with the Tehama County District Attorney's Office and an expert in marijuana investigations, was looking at a Web site called "budtrader.com" when he came across a job listing for a kitchen worker for a marijuana edibles business in Red Bluff. The listing included the Web site address <www.buddbuzzard.com>. According to that Web site, Budd Buzzard produced and sold marijuana laced beef jerky, honey, and tinctures (a concentrated form of marijuana). The Web site listed defendant as the company's founder and described the business's recent expansion and purchase of a mobile kitchen. Clay performed an online records search for fictitious business filings and found defendant listed as the registered owner of Budd Buzzard Products based at 23410 Hillman Court in Red Bluff.

On June 22, 2011, Clay along with members of the Tehama Interagency Drug Enforcement Task Force (TIDE) executed a search warrant at 23410 Hillman Court in Red Bluff. The search included a residence and a 25-foot trailer located behind the residence.

The trailer contained a fully-enclosed industrial kitchen, complete with stainless steel appliances, a stove, a dehydrator, and a refrigerator. Officers also found two digital scales, several boxes of gallon-size Ziploc freezer bags, approximately 2,000 one-ounce baggies, and a sheet of Budd Buzzard's Jerky sticker labels.

The residence contained three bedrooms, two of which had been converted: one to an office and the other to a "hangout" or "party" room. It appeared that only defendant lived in the main residence. Inside the office officers found: three five-gallon buckets containing a liquid form of marijuana labeled "tincture" and "20-ounces to four gallons," two five-gallon buckets containing what appeared to be honey, a scale, a credit card scanner, invoices, business cards, sticker labels, and United Parcel Service (UPS) pouches. There were between 12 and 20 sales receipts and invoices found, some for

3

"cannabis jerky" and "honey." The invoices were labeled Budd Buzzard Beef Jerky. One invoice, dated May 26, 2011, showed $100 cash was paid for one pound of jerky. A photocopy of a receipt dated June 2, 2011, showed $500 cash was paid for "24 tincture, six honey, and one pound jerky . . . ."

The business cards read, "Budd Buzzard Products Makers of the Original Cannabis Beef Jerky. It is yummy good," and listed defendant's name, a phone number, and the Web site <www.buddbuzzard.com>. The back of the cards read, "We're now shipping throughout California and we pay for the shipping with orders totalling [*sic*] $200 or more. www.buddbuzzard.com. Beef jerky, $100 pound . . . [(]32 times .5 bags equal one pound[)] . . . Honey/Pot, $15 . . . [(]Three-ounce jar[)] . . . tincture, $15 each or four for $50 . . . [(]One ounce bottles[)]."

The sticker labels had a picture of a marijuana leaf and read, "A Nor . . . Cal product, $7 . . . [(]Two for $12[)]" and "www.buddbuzzard.com."

Another document found in the office showed 100 shipping pouches had been ordered by "Budd Buzzard Products Tom" and received from a UPS shipping supply company.

Inside the kitchen of the main residence, officers found 38 gallon-size freezer bags, each of which contained 32 smaller bags of jerky. Each of the smaller bags was labeled, "Budd Buzzard Products, Jerky," and "half ounce." There were nine small bags of jerky that were not inside of a larger bag. Officers also discovered two amber-colored bottles of liquid with dropper tops and labels that said, "Budd Buzzard, Tincture Number 6"; two one-gallon containers full of a liquid substance, labeled "tincture" and "8 to 1"; various containers holding a sludge-like, green material that smelled liked marijuana; a crock pot containing liquid and plant material that looked and smelled like marijuana; two vacuum heat sealers; and a container labeled "honey for jerky."

Inside the "hangout" room officers found 17 mason jars containing about one and one-half pounds of marijuana, a recipe for 100 pounds of marijuana jerky, and a

breakdown of the cost to produce 100 pounds of marijuana jerky. Seven of the jars were labeled with the strain of marijuana inside. Officers also found various pipes and bongs.

There were two messages on the answering machine: one from a UPS representative concerning setting up an account to ship items; and another from a woman calling about marijuana jerky.

Outside officers discovered ten live marijuana plants, three of which were in the flowering stage.

Defendant returned home during the search and his car was searched. Officers found over 50 pounds of beef in the trunk. Defendant's wallet contained a credit card with his name and "Budd Buzzard Products," as well as shipping receipts indicating beef jerky had been shipped on June 15, 2011.

During the search, an employee who "work[ed] with the jerky" arrived at the residence. Completed timecards for "Gary" and "Marcos" were found in the office inside the residence. The first date that appears on the timecards is April 28, 2011, and the last date is May 3, 2011.

Law enforcement recovered a total of 38 pounds of beef jerky and over two pounds of usable marijuana from the residence, not including the tinctures and jerky. Forensic analysis of the jerky revealed the presence of Delta 9 tetrahydrocannabinol (THC), the psychoactive ingredient in marijuana. Tincture taken from the residence also tested positive for Delta 9 THC. Testing of the honey was inconclusive. A usable amount of concentrated cannabis was found in the two dropper-top bottles, two gallon-size containers, and other marijuana products in various stages of production.

Clay opined that while some of the marijuana may have been possessed for personal use, "overall, the marijuana, especially in the various forms of jerky, honey, tincture," was possessed for sale and defendant was operating a commercial enterprise. Clay based his opinion on, among other things, the shipping receipts, Web site presence, and shipping materials.

5

Two computers were seized from the residence. The hard drive of one of the computers contained 33 images of suspected child pornography. Many of the images depicted small children and undeveloped teens in sexual postures manipulating a male's erect penis or engaged in sexual intercourse or oral copulation.

B.     The Defense

Dr. Marilyn Hulter, a board-certified anesthesiologist, who worked at the Cannabis Healing Clinic in Redding, testified for the defense. She examined defendant at the clinic in March 2011, when he was renewing his "Proposition 215 recommendation."[3] Hulter determined defendant would benefit from the use of medical marijuana for pain relief and issued him a recommendation for the use of medical marijuana in the amount of two ounces per week. Two ounces per week equates to six and one-half pounds per year. Defendant told Hulter he gargled with a tincture made from marijuana and honey. He also told her he was making marijuana beef jerky for dispensaries.

Kirk Stockham, a computer forensics expert, testified that when a user deletes data on a computer it may go to unallocated space, which means it is no longer indexed by the computer but is left on the hard drive as raw data machine code. The pictures found on defendant's hard drive were in the unallocated space. The report used by the prosecution's expert indicated all 33 pictures relied on by the prosecution occupied the same byte space, which is not possible. Thus, the report relied on by the prosecution's expert was in error. It is not possible to determine how the pornographic images got into the unallocated space on defendant's hard drive.

---

[3] Proposition 215 refers to an initiative adopted by the votes that became the Compassionate Use Act (Health & Saf. Code, § 11362.5). (*People v. Kelly* (2010) 47 Cal.4th 1008, 1012.)

DISCUSSION

I

The Trial Court Did Not Err in Failing to Consider Defendant's Motion for New Trial

Defendant contends the trial court erred in failing to consider his motion for a new trial, and thus, the matter must be remanded for a hearing on the motion. We disagree.

At his sentencing hearing, defendant, against the advice of his counsel, informed the trial court that he had prepared a motion for new trial, his mother had submitted it to the clerk of the court, and the clerk refused to file it because defendant was represented by counsel.[4] The trial court sentenced defendant without considering his motion. Defendant's motion does not appear in the record.

As indicated above, defendant was represented by counsel when his mother sought to submit the motion for new trial. Consequently, "the court had the authority to refuse to file or consider pro se motions and other documents presented by [defendant] that related to the conduct of the case," including any motion for a new trial. (*People v. Harrison* (2001) 92 Cal.App.4th 780, 789; see *People v. Merkouris* (1956) 46 Cal.2d 540, 554-555; see also *People v. Clark* (1992) 3 Cal.4th 41, 173; *People v. Mattson* (1959) 51 Cal.2d 777, 797-798.)

---

[4] Specifically, defendant told the court, "It says it all in the motion. It is under the motion under California law. With the guidelines that was [*sic*] going by, I should have never been prosecuted. And, it is all in that motion. It is all in law. I do have a copy of the Senate Bill 420 with me which is the Medical Marijuana Program Act. I have the Department of Justice state guidelines for the security and non-diversion of marijuana drawn for medical use with me and everything it says in there along with also case law showing I am supposed to be exempt from these charges. It is all in the motion. I would like to submit it to the Court so it would be public record."

II

There Is Sufficient Evidence Defendant Maintained a Place for Selling Marijuana

Defendant next contends there is insufficient evidence to support his conviction for maintaining a place for selling a controlled substance "because the record lacks credible evidence that [defendant] made his home or the buildings on it available to others for drug use or drug transactions." Again, we disagree.

"When the sufficiency of the evidence is challenged on appeal, we apply the familiar substantial evidence rule. We review the whole record in a light most favorable to the judgment to determine whether it contains substantial evidence, i.e., evidence that is credible and of solid value, from which a rational trier of fact could find beyond a reasonable doubt that the accused committed the offense." (*In re Ryan D.* (2002) 100 Cal.App.4th 854, 859.) "An appellate court must accept logical inferences that the jury might have drawn from the circumstantial evidence." (*People v. Maury* (2003) 30 Cal.4th 342, 396.) "Before the judgment of the trial court can be set aside for the insufficiency of the evidence, it must clearly appear that on no hypothesis whatever is there sufficient substantial evidence to support the verdict of the jury." (*People v. Hicks* (1982) 128 Cal.App.3d 423, 429.)

Health and Safety Code section 11366 provides in pertinent part: "Every person who opens or maintains any place for the purpose of unlawfully selling, giving away, or using any controlled substance which is . . . specified in paragraph (13) . . . of subdivision (d) of Section 11054 . . . shall be punished by imprisonment in the county jail for a period of not more than one year or the state prison." Paragraph (13) of subdivision (d) of section 11054 of the Health and Safety Code lists marijuana as a controlled substance. "[T]he acts of 'selling' and 'giving away'—as used in the phrase 'selling, giving away, or using' in [Health and Safety Code] section 11366—both require the participation of a person other than defendant, *i.e., a purchaser or recipient*." (*People v. Franco* (2009) 180 Cal. App. 4th 713, 721 (*Franco*), italics added.) "[T]he offense defined by [Health

8

and Safety Code] section 11366 'is not a simple possession offense,' but 'is more like a commercial offense' such as the sale, production or manufacture of controlled substances." (*Id.* at p. 722, quoting *People v. Ferrando* (2004) 115 Cal.App.4th 917, 920.)

In this case, a large quantity of packaged marijuana jerky was discovered at defendant's residence, labeled and ready for sale. In addition, officers discovered evidence of a manufacturing and sales operation, including a commercial kitchen, packaging materials, shipping materials, scales, business cards, and product labels. Of particular significance, officers found business cards that read, "Budd Buzzard Products Makers of the Original Cannabis Beef Jerky," included defendant's name, the Web site <www.buddbuzzard.com>, and pricing information, and stated, "We're now shipping throughout California . . . ." They also found numerous receipts and invoices that reflected recent sales of marijuana products. There also was a message on his home telephone from a UPS representative about setting up a shipping account and another from a woman inquiring about marijuana jerky. The fictitious business filing lists defendant as the registered owner of Budd Buzzard Products and lists the business's address as 23410 Hillman Court, defendant's residence. A reasonable jury could infer from such evidence that defendant's residence was maintained for the purpose of selling marijuana jerky and other marijuana laced products.

Defendant concedes that "the evidence supports the inference that [he] maintained a marijuana shipping business" but argues that is insufficient to constitute a violation of Health and Safety Code section 13366. According to defendant, the prosecution was required to produce evidence of persons physically going onto his property to purchase his products. Neither the statute nor the cases interpreting it support such a construction. While personal use or simple possession does not constitute a violation of the statute (*Franco, supra*, 180 Cal.App.4th at pp. 721-722), maintaining a place for the purpose of

9

selling marijuana laced products to others, even if such sales are done exclusively through the mail, does constitute a violation.

In sum, ample evidence supports the jury's finding that defendant maintained his residence for the purpose of selling a controlled substance to others.

III

The Trial Court Properly Imposed a Sex Offender Fine in the Amount of $500

Defendant next contends the trial court erred in determining the base sex offender fine was $500.  He is mistaken.

Section 290.3, subdivision (a) states:  "Every person who is convicted of any offense specified in subdivision (c) of Section 290 shall, in addition to any imprisonment or fine, or both, imposed for commission of the underlying offense, be punished by a fine of three hundred dollars ($300) upon the first conviction or a fine of five hundred dollars ($500) upon the second and each subsequent conviction, unless the court determines that the defendant does not have the ability to pay the fine."  Among the offenses specified in subdivision (c) of section 290 are violations of sections 264.1, 288a, 289, and 311.11.

Here, defendant was convicted of violating section 311.11 and admitted four prior convictions for violating section 288a, one prior conviction for violating section 289, and five prior convictions for violating section 264.1.  Because defendant had 10 prior convictions for offenses specified in subdivision (c) of section 290, the trial court properly imposed a base fine of $500.

Defendant's assertion that section 290.3 does not encompass convictions in other proceedings lacks merit.  There is nothing in the statute that indicates that is the case.  Moreover, *People v. O'Neal* (2004) 122 Cal.App.4th 817 (*O'Neal*), cited by defendant, supports a contrary interpretation.  There, the defendant pleaded guilty to two counts of committing a lewd act upon a child under the age of 14, and the trial court imposed two fines pursuant to section 290.3, subdivision (a).  (*O'Neal,* at p. 819.)  The defendant argued "nothing permits the imposition of multiple section 290.3 fines in the same

10

proceedings." (*Id.* at p. 822.)  In rejecting the defendant's claim, the court observed that Penal Code section 290.3, subdivision (a) "refers to fines for *convictions*, not fines for proceedings." (*O'Neal,* at p. 822, italics added.)  While *O'Neal* involved two convictions in a single proceeding, its focus on the number of *convictions* is equally applicable here. Because defendant's conviction for possession of child pornography constituted a "subsequent conviction" under section 290.3, subdivision (a), the trial court did not err in imposing a $500 base fine.

IV

The Criminal Conviction Assessment Must Be Reduced from $175 to $150

Defendant also contends, and the People concede, that the criminal conviction assessment imposed pursuant to Government Code section 70373, subdivision (a)(1) must be reduced from $175 to $150 because the base amount per count is $30.  We agree.

Subdivision (a)(1) of Government Code section 70373 states in pertinent part: "To ensure and maintain adequate funding for court facilities, an assessment shall be imposed on every conviction for a criminal offense . . . .  The assessment shall be imposed in the amount of thirty dollars ($30) for each misdemeanor or felony and in the amount of thirty-five dollars ($35) for each infraction."

Defendant was convicted of five felonies.  Accordingly, the total assessment should be $150 (5 multiplied by $30), and *not* $175.

V

Defendant Is Entitled to Conduct Credit

Defendant was sentenced to 25 years to life and awarded 384 days of presentence custody credit (§ 2900.5, subd. (a)).  Defendant contends, and the People concede, that he should be awarded 192 days of presentence conduct credit, for a total of 576 days of presentence custody credit.  We agree.

A defendant sentenced under the Three Strikes law is entitled to presentence conduct credits under section 4019 where, as here, the current felony is not a violent

11

felony.  (*People v. Thomas* (1999) 21 Cal.4th 1122, 1129-1130; *People v. Williams* (2000) 79 Cal.App.4th 1157, 1175-1176.)  The Legislature amended section 4019 effective September 28, 2010, (Stats. 2010, ch. 426, § 2) and again effective October 1, 2011, (Stats. 2011, ch. 15, § 482; Stats. 2011, ch. 39, § 53).  The applicable version of section 4019 is that which was in effect between these two dates because defendant committed his crimes during that period (on June 22, 2011).  (See *People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 48-49 (*Rajanayagam*).)  The September 2010 amendment deleted the subdivision excluding sex registrants and defendants with a prior strike from enhanced credit earning eligibility.  Instead, all prisoners accrued conduct credits at a rate of two days for every four days in custody.  (Former § 4019, as amended by Stats. 2010, ch. 426, § 2; see *Rajanayagam,* at p. 49.)  To calculate the conduct credits, we calculate the number of actual custody days, divide by four, drop the remainder, and then multiply by two.  (See *In re Marquez* (2003) 30 Cal.4th 14, 26.)

Here, defendant was in continuous custody from June 22, 2011, the day of his arrest, to July 10, 2012, the day of his sentencing.  At sentencing, the trial court correctly awarded defendant 384 days of presentence confinement credit.[5]  The trial court erred, however, failed to award defendant any conduct credit.  Utilizing the formula set forth above, defendant is entitled to 192 days of conduct credit (384 divided by 4 equals 96; 96 multiplied by 2 equals 192).  Thus, the total amount of presentence custody credit should be increased from 384 to 576 days.

---

[5]  In his opening brief, defendant erroneously asserts that the trial court miscalculated the amount of time he was in actual custody and that the time period between June 22, 2011, and July 10, 2012, amounted to 387 days.  He appears to have properly abandoned that claim in his reply brief.

## VI

### The Abstract of Judgment Must Be Corrected

As previously discussed (see *ante,* fn. 2.), the trial court failed to specify that that the sentence on count V was to be consecutive, rather than concurrent; hence, it must be construed as concurrent (§ 669, subd. (b).) The abstract of judgment incorrectly fails to indicate that defendant's sentence on count V is to run concurrent. The trial court shall correct this clerical error by checking the box "CONCURRENT" next to count V in section 1 of the abstract of judgment.

### DISPOSITION

The judgment is modified to (1) reduce the criminal assessment imposed pursuant to Government Code section 70373, subdivision (a)(1) from $175 to $150, and (2) award defendant, in lieu of the 384 days originally received, 576 days of presentence custody credits, consisting of 384 actual days and 192 conduct days. As so modified, the judgment is affirmed. The trial court is directed to (1) amend the abstract of judgment to reflect these modifications, and (2) correct section 1 of the abstract of judgment to reflect that defendant's sentence on count V is to run concurrent to his sentence on count I. The trial court shall forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.


    BLEASE           , Acting P. J.


We concur:


    DUARTE        , J.


    HOCH          , J.