Filed 10/11/24  P. v. Leon CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ANGEL BROQUE LEON,<br><br>    Defendant and Appellant. | G062849<br><br>(Super. Ct. No. 21HF1982)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Gary S. Paer, Judge. Affirmed.

Lindsey M. Ball, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Heather M. Clark, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

## INTRODUCTION

A jury convicted Angel Broque Leon of one count of possession for sale of a controlled substance (fentanyl) in violation of Health and Safety Code section 11351. Before trial, the prosecution dismissed the other charged count, which was for misdemeanor possession of a controlled substance (methamphetamine) in violation of Health and Safety Code section 11350. After striking a prior conviction for purpose of sentencing, the trial court sentenced Leon to a prison term of four years.

Leon seeks reversal based on three contentions: (1) The trial court erred by instructing the jury with a credibility instruction modified to refer to misconduct related to methamphetamine; (2) the trial court erred by instructing the jury on constructive possession of controlled substances; and (3) cumulative error. We conclude Leon's challenge to the credibility instruction is barred by the invited error doctrine and the instruction on constructive possession, if erroneous, was harmless. We therefore affirm.

## STATEMENT OF FACTS

On November 2, 2021, Newport Beach police officer Jacob Khor was dispatched to the parking lot of a shopping center in Newport Beach in response to a report of a road rage incident. At the scene, Khor saw a silver Hyundai Sonata taking up two parking spaces and, next to it, a white Lexus. A woman, later identified as Autumn McWilliams, was standing outside of the Hyundai; Leon was seated in the rear passenger-side seat.

McWilliams told Khor the owner of the Hyundai was Keith Bowling. A records check revealed that Bowling had an active "no bail" warrant for his arrest, so Khor called for backup. Khor and two other police officers searched the area for Bowling but could not find him. When the officers returned to the scene, the Hyundai was gone.

2

The officers soon located the Hyundai nearby. Four people were inside of it: Bowling in the driver's seat; McWilliams in the front passenger seat; Liam Yanez in the rear driver's-side seat; and Leon in the rear passenger's-side seat. Two police officers searched Bowling and found on him two clear medium-sized plastic baggies. One baggie contained four gross grams[1] of fentanyl and the other baggie contained 23 gross grams (net 22.173 grams) of fentanyl. The officers also found on Bowling $1,201 in cash and a plastic, turquoise-colored container containing .73 grams of fentanyl.

Inside the Hyundai, the officers found on the driver's-side door handle a clear baggie containing 2.98 gross grams of fentanyl and, on the driver's-side floorboard, a baggie containing numerous small baggies. In the center console, the officers found a baggie containing 13.130 grams of methamphetamine and 24 milligrams of fentanyl. The officers found no drug paraphernalia inside the car.

Khor searched Yanez and found on him a clear plastic cigarette holder containing .80 gross grams of buprenorphine, which is an opioid. After Yanez was taken into custody, officers found two used syringes in his waistband and foil and a burned pen in his pants. Officers searched Leon and found in his left shirt pocket a small piece of rolled up paper containing .58 gross grams (net 376 milligrams) of methamphetamine. In Leon's left pants pockets the officers found a clear baggie containing 22.58 grams of para-fluoro fentanyl combined with acetaminophen. Para-fluoro fentanyl is an analog of and substantially similar to fentanyl. The officers also found a folding knife on Leon. The drugs found on Leon were in usable amounts. Drug paraphernalia was not found on him.

---

[1] A gross gram is the weight including the packaging.

Leon was arrested for possession of a controlled substance. At the jail, officers searched Leon again and found $1,206 in cash wadded into a roll inside the pocket of his shorts. After interviewing Leon, Khor made the decision to charge him only with possession of a controlled substance. Khor told Leon his money was not being confiscated because Khor did not believe that Leon possessed the drugs found on him for sale. At the time of Leon's arrest, Khor did not have a lot of special training in narcotic sales and had investigated five to ten cases involving fentanyl for sale.

Leon testified on his own behalf. He testified that on the day he was arrested he had come from Los Angeles to join the others in the Hyundai and take a Newport Harbor cruise with them. Leon testified he was a long-time drug user but never used fentanyl. He claimed: (1) he had been given the drugs found in his shirt pocket and pants pocket by Bowling; (2) he knew methamphetamine was in one baggie given to him by Bowling but did not know what was in the other baggie because he had quickly placed it in his pants pocket; and (3) the cash found on him was government stimulus money that he had withdrawn from the bank "in 2021 or sometime before."

## DISCUSSION

### I.

### THE INVITED ERROR DOCTRINE BARS LEON CHALLENGE TO THE CREDIBILITY INSTRUCTION

The trial court read the jury two instructions regarding witness credibility: CALCRIM No. 226 (Witnesses) and CALCRIM No. 316 (Additional Instructions on Witness Credibility—Other Conduct). At the request of Leon's counsel, the court read alternative B of CALCRIM No. 316,[2] modified to read

---

[2] CALCRIM No. 316 offers two alternatives. Alternative A is for a witness who has been convicted of a felony. Alternative B is for a witness who has engaged in prior criminal conduct with or without a conviction.

4

as follows: "If you find that a witness has committed a crime or other misconduct *involving methamphetamine*, you may consider that fact only in evaluating the credibility of the witness's testimony. The fact that a witness may have committed a crime or other misconduct does not necessarily destroy or impair a witness' credibility. It is up to you to decide the weight of that fact and whether that fact makes the witness less believable." (Italics added.)

Leon argues the trial court erred by modifying CALCRIM No. 316 with the italicized words because use of a controlled substance is not conduct reflecting moral turpitude. We conclude the doctrine of invited error bars Leon's challenge to the jury instruction.

The doctrine of invited error bars an appellant from challenging a jury instruction given by the trial court if the appellant requested the instruction as a conscious and deliberate tactical choice. (*People v. DeHoyos* (2013) 57 Cal.4th 79, 138.) The invited error doctrine is designed to prevent an appellant from obtaining a reversal based on an error made at the appellant's behest. (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 49.) "'If defense counsel intentionally caused the trial court to err, the appellant cannot be heard to complain on appeal.'" (*People v. Bailey* (2012) 54 Cal.4th 740, 753.)

The invited error doctrine bars appellate review only if the record shows that counsel had a tactical reason for requesting or acquiescing in the instruction. (*People v. Moon* (2005) 37 Cal.4th 1, 28.) However, in cases in which defense counsel took affirmative actions toward inviting the error, "a

---

Alternative B reads: "[If you find that a witness has committed a crime or other misconduct, you may consider that fact [only] in evaluating the credibility of the witness's testimony. The fact that a witness may have committed a crime or other misconduct does not necessarily destroy or impair a witness's credibility. It is up to you to decide the weight of that fact and whether that fact makes the witness less believable.]" (CALCRIM No. 316.)

clearly implied tactical purpose" is sufficient to invoke the invited error doctrine. (*People v. Coffman and Marlow, supra*, 34 Cal.4th at p. 49.)

The record in this case establishes that Leon's counsel requested and actively sought the modification to CALCRIM No. 316 that Leon now challenges. Outside the presence of the jury, the court and counsel had a discussion regarding jury instructions. On the record, the court "formalize[d]" the decision reached during that discussion The following was said regarding CALRIM No. 316:

"THE COURT: Also 316 which dealt with witness credibility you had asked I believe for part two of that dealing with misconduct. [¶] You wanted the Court to include the language involving methamphetamine?

"[DEFENSE COUNSEL]: Please.

"THE COURT: So the first sentence would read, quote, 'if you find that a witness has committed a crime or other misconduct involving methamphetamine, you may consider that fact,' and then the rest of the instruction goes on. [¶] Is that the way you want it?

"[DEFENSE COUNSEL]: Including the bracketed [""]only[""]?

"THE COURT: Yes.

"[DEFENSE COUNSEL]: Yes"

Several days later, the court again addressed the modification to CALCRIM No. 316. The following discussion took place:

"THE COURT: . . . . There was one thing I did want to put on the record in regards to the instructions. There was that instruction on witness credibility. [¶] And counsel, . . . in number 316 dealing with if a witness committed a crime or other misconduct, you wanted to specify that was involving methamphetamine.

"[DEFENSE COUNSEL]: Yes.

6

"THE COURT: Is that accurate?

"[DEFENSE COUNSEL]: Yes.

"THE COURT: The change was made. I wanted to make sure that the record included the fact that you wanted that added in and that I didn't put that in on my own."

Leon's trial counsel thus requested and four times confirmed he wanted alternative B to CALCRIM No. 316 modified to include "other misconduct involving methamphetamine." If the modified instruction is erroneous, then Leon's trial counsel invited the error at least four times.

*People v. Merriman* (2014) 60 Cal.4th 1 is similar. In *Merriman*, the defendant argued that an instruction that the jury could not consider his "lifestyle or background" as an aggravating factor during the penalty phase of trial was erroneously vague. (*Id.* at p. 103.) During a discussion over jury instructions, defense counsel had requested the instruction and insisted the word "lifestyle" was appropriate in the context of the case. (*Id.* at p. 103-104.) The California Supreme Court concluded the record supported a finding of invited error. (*Id.* at p. 104.)

Leon argues the invited error doctrine does not apply because his counsel did not express a tactical reason for requesting the modification to CALCRIM No. 316 and record does not reveal one. But a tactical reason for requesting the modification can be implied because Leon's counsel requested and took affirmative actions toward having CALCRIM No. 316 modified in the manner Leon now challenges. (*People v. Coffman and Marlow, supra*, 34 Cal.4th at p. 49.)[3]

---

[3] At oral argument, the Attorney General argued defense counsel had two tactical purposes requesting alternative B of CALCRIM No. 316: (1) to ensure the jury did not convict Leon on the lesser included offense of simple possession based on his testimony that he had methamphetamine in

7

Leon argues the invited error doctrine does not bar his challenge to the modified CALCRIM No. 316 because the trial court had a sua sponte duty to correctly instruct the jury. A trial court does not have a sua sponte duty to instruct with CALCRIM No. 316. (*People v. Kendrick* (1989) 211 Cal.App.3d 1273, 1278 [analogous instruction of CALJIC No. 2.23]; see also Evid. Code, § 355 [court upon request shall instruct jury on limited use of evidence]; *People v. Hernandez* (2004) 33 Cal.4th 1040, 1051 ["although a court should give a limiting instruction on request, it has no sua sponte duty to give one"].) "Because the [trial] court had no sua sponte duty to instruct in a manner contrary to a defendant's request, an appellate attack on the instruction as requested is barred by the doctrine of invited error." (*People v. McPeters* (1992) 2 Cal.4th 1148, 1191, fn. 2.)

An appellate court may review instructional error even if no objection was made at trial if the instruction affects the defendant's "substantial rights." (Pen. Code, § 1259.) The "substantial rights" exception of Penal Code section 1259 does not apply, however, when instructional error is invited. (*People v. Graham* (1969) 71 Cal.2d 303, 319.) A defendant who is barred from raising instructional error by the invited error doctrine may present a claim for ineffective assistance of counsel. (*People v. Wader* (1993) 5 Cal.4th 610, 658.) Leon does not assert ineffective assistance of counsel in this appeal.

---

his shirt pocket, and (2) to bolster Leon's credibility and show he was being honest when he testified he did not know that fentanyl was in one of the baggies that Bowling gave him. We do not decide whether those reasons satisfy the invited error doctrine because defense counsel took affirmative steps toward inviting any error.

## II.

### THE CONSTRUCTIVE POSSESSION INSTRUCTION, IF ERRONEOUS, WAS HARMLESS

The court instructed the jury with CALCRIM No. 2302 (possession for sale of a controlled substance) and CALCRIM No. 2304 (simple possession of a controlled substance). In both instructions, the trial court included the following optional language for constructive possession: "The People do not need to prove that the defendant knew which specific controlled substance he possessed. Two or more people may possess something at the same time. A person does not actually have to hold or touch something to possess it. It is enough if the person has control over it or the right to control it either personally or through another person."

Leon argues the trial court erred by instructing the jury with the optional language on constructive possession because there was no evidence that Leon had control over, or the right to control, the items found in the Hyundai's driver's-side door handle, driver's-side floorboard, or center console.

Leon forfeited his challenge to the constructive possession instructions by failing to object to either instruction or to the inclusion of the optional language on constructive possession. (*People v. Lee* (2011) 51 Cal.4th 620, 638.) In fact, Leon's counsel affirmed he was satisfied with those instructions.

An appellate court may review "any instruction given, . . . even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby." (Pen. Code, § 1259.) "'Ascertaining whether claimed instructional error affected the substantial rights of the defendant necessarily requires an examination of the merits of the claim—at least to the extent of ascertaining whether the asserted error

9

would result in prejudice if error it was." [Citation.]' (*People v. Franco* (2009) 180 Cal.App.4th 713, 719.)

The constructive possession instructions, if erroneously given, did not result in prejudice to Leon and therefore did not affect his substantial rights. Error in giving a jury instruction is reviewed for prejudice under the standard of *People v. Watson* (1956) 46 Cal.2d 818, 836. (*People v. Hendrix* (2022) 13 Cal.5th 933, 942.) Under the *Watson* standard, error is deemed to be harmless unless, upon examination of the entire record, it is reasonably probable the outcome at trial would have been different in the absence of the error. (*Ibid.*)

Evidence of the drugs and cash found on Leon was more than sufficient to prove possession for sale. Found on Leon was 22.58 grams of para-fluoro fentanyl combined with acetaminophen. The prosecution expert witness, Quinton McKay, testified that amount was about 110 dosage units— far more than an average person would possess for personal use. Leon testified he did not use fentanyl. Also found on Leon was $1,206 in cash wadded into a roll. Quinton testified the cash would have been received from selling fentanyl. The amount of fentanyl and cash found on Leon was nearly the same as the respective amounts found on or near Bowling.

Given a hypothetical mirroring the facts of this case, McKay opined that the backseat passenger (Leon) possessed the fentanyl found on him for sale. When asked for the basis of his opinion, McKay testified: "Based on the rear passenger possessing very nearly the same amount of fentanyl as the driver and also having just a little bit more cash than the driver, which is a significant amount of cash to be paired up with that much fentanyl. . . . [¶] This is also in part to the fact that in addition to the cash the rear passenger was found with a knife on his person, which is another indicator that we

commonly see with people who possess drugs and large amounts of cash when they are drug dealing. . . .”

McKay opined that the driver (Bowling) also possessed fentanyl for sale. As to the driver, the basis for McKay's opinion included the items found Hyundai's driver door handle, driver's-side floorboard, and center console. McKay did not link any of those items to Leon. McKay testified the amount of fentanyl and cash found on the backseat passenger was “quite high” and so “*[d]espite the rear passenger not being directly related to the baggies found on the driver's floor* it still shows that this person in the rear [seat] was significant in being involved with at least possessing that much cash and that much fentanyl for some sort of purpose other than for personal use.” (Italics added.) McKay also testified that drug dealers sometimes work together in order to increase the size of their client base.

The prosecutor's closing argument may be considered in assessing prejudice. (*People v. Cain* (1995) 10 Cal.4th 1, 37.) Although the prosecutor did mention the baggie of fentanyl found in the driver's-side door handle and the baggies found on the driver's-side floorboard, that evidence was not emphasized. Rather, the prosecutor emphasized the amounts of fentanyl and cash found on Leon, the fact those amounts were nearly the same as the amounts found on Bowling, and Leon's possession of a knife. The prosecution argued that McKay “kept honing in on the fact there was a very large amount of fentanyl” found on Leon and that “McKay said the cash coupled with the large amount of drugs was a key indicator to him.”

The prosecution also argued Leon was guilty of possession for sale under a theory he aided and abetted Bowling by holding onto large quantities of fentanyl to be sold by Bowling. The prosecutor argued the drugs

11

and baggies found in the driver's-side door handle, driver's-side floorboard, and center console showed that Bowling was the perpetrator.

Leon cites his own testimony as evidence the constructive possession instructions were prejudicial. He claims he provided a plausible explanation for having the fentanyl and $1,206 in cash. He testified he did not know what was in one of the baggies Bowling had given him. But at the jail, Leon told the arresting officer that Bowling had given him the baggie because Bowling was on parole "or something"—a clear indication to Leon that an illicit substance might have been in the baggie. Leon claimed that sometime in 2021 he used a government stimulus card to withdraw $1,206— which just happened to be around the same amount found on Bowling, $1,200. Leon testified he had kept the cash at his home yet, for some reason, brought it with him when he went to Orange County. The jurors disbelieved Leon, and it is not reasonably probable their disbelief was due to the constructive possession instructions.

In light of the evidence of the large amounts of fentanyl and cash found on Leon, his possession of a knife, McKay's testimony, and the prosecution's closing argument, it is not reasonably probable the jury would have returned a different verdict had it not been instructed on constructive possession.

## III.

### CUMULATIVE ERROR

Leon argues cumulative error. There is no cumulative error because one of Leon's claims of error is barred by the invited error doctrine and the other claimed error is harmless. (See *People v. Carter* (2005) 36 Cal.4th 1215, 1281.)

DISPOSITION

The judgment is affirmed.


SANCHEZ, J.

WE CONCUR:


MOORE, ACTING P. J.


DELANEY, J.

13